OPINIONS OF THE SUPREME COURT OF OHIO

The full texts of the opinions of the Supreme Court of Ohio are being transmitted electronically beginning May 27, 1992, pursuant to a pilot project implemented by Chief Justice Thomas J. Moyer.

Please call any errors to the attention of the Reporter's Office of the Supreme Court of Ohio.  Attention:  Walter S. Kobalka, Reporter, or Justine Michael, Administrative Assistant. Tel.:  (614) 466-4961; in Ohio 1-800-826-9010.  Your comments on this pilot project are also welcome.

NOTE:  Corrections may be made by the Supreme Court to the full texts of the opinions after they have been released electronically to the public.  The reader is therefore advised to check the bound volumes of Ohio St.3d published by West Publishing Company for the final versions of these opinions.  The advance sheets to Ohio St.3d will also contain the volume and page numbers where the opinions will be found in the bound volumes of the Ohio Official Reports.

Savage et al., Appellees and Cross-Appellants, v. Correlated Health Services, Ltd., Cross-Appellee; Sveda et al., Appellants and Cross-Appellees; Snyder et al., Appellants.

[Cite as Savage v. Correlated Health Serv., Ltd. (1992), Ohio St.3d     .]

Malpractice -- Damages award -- Workers' compensation and Social Security benefits fall under the definition of "insurance" in R.C. 2305.27 and therefore do not reduce medical malpractice damage awards.

(No. 90-2366 -- Submitted December 10, 1991 -- Decided June 17, 1992.)

Appeals and Cross-Appeal from the Court of Appeals for Summit County, Nos. 14491 and 14498.

In 1967, appellee and cross-appellant, Edward R. Savage, was injured at his place of employment. Subsequently, Savage sought chiropractic treatment for relief of his injury. From 1973 through March 1987, Savage was treated by Dr. J.C. Archer, D.C., for periodic "flare-ups" of his condition.

On March 24, 1987, Savage was again examined by Dr. Archer, who determined that Savage's condition was not improving as expected. Therefore, Dr. Archer referred Savage to another chiropractor, appellant, Dr. David W. Snyder. In April 1987, Savage was examined by Dr. Snyder. At that time, Savage was experiencing back pain and a "pin-prick" sensation in his legs, feet and lower back. Dr. Snyder then arranged for Savage to be examined by appellant and cross-appellee, Dr. Stephen J. Sveda, M.D.

On April 7, 1987, Dr. Sveda examined Savage and concluded that Savage was suffering from a protruded disk. Dr. Sveda recommended that Savage continue to receive chiropractic manipulation therapy. Thereafter, Savage received chiropractic treatment from Dr. Snyder on a number of occasions.

On May 14, 1987, Savage arrived at the office of cross-appellee, Correlated Health Services, Ltd. ("CHS"), for a regularly scheduled appointment with Dr. Snyder. However, another chiropractor, Dr. Michael Shimmel, D.C., appellant, was covering Dr. Snyder's appointments that day. Savage received chiropractic treatment from Dr. Shimmel and, following the treatment, Savage began experiencing certain physical problems such as loss of bladder and bowel control. Two days later, Savage was taken by paramedics to Robinson Memorial Hospital.

On May 21, 1987, Savage underwent decompression surgery to relieve the symptoms of his condition, which was diagnosed as "cauda equina syndrome." Cauda equina syndrome has been described as a condition resulting from a compression to a group or bundle of nerves at the lower end of the spinal cord. These nerves control bladder and bowel function, motor function, sensation of the lower extremities, and sexual function in males. The record indicates that Savage's condition was caused by the chiropractic manipulation performed by Dr. Shimmel and that the condition is permanent and irreversible.

On July 21, 1987, Savage and his wife, appellee and cross-appellant, Anna Savage (collectively referred to as "appellees"), filed a complaint and subsequently an amended complaint setting forth negligence claims against, inter alia, CHS; Dr. Sveda; appellant and cross-appellee, Stephen J. Sveda, M.D., Inc.; Drs.

Shimmel and Snyder; and David W. Snyder, D.C., Inc.  Thereafter, the parties commenced discovery in preparation for trial.

Dr. Kenneth Schulze is the surgeon who performed Savage's decompression surgery and who treated Savage through July 1987. By letter dated August 15, 1989, appellees provided opposing counsel with a list of appellees' expert witnesses.  The expert witnesses listed in the letter are Drs. John Kustuik, Stewart Bailey, Edward C. Sullivan and John F. Burke.  The letter further provides that appellees "* * * will also call Kenneth Schulze, M.D., who is one of plaintiff's treating physicians.  We may also employ an expert in the field of vocational rehabilitation."  Su

bsequently, appellees provided appellants herein (Dr. Sveda, Stephen J. Sveda, M.D., Inc., Drs. Shimmel and Snyder and David W. Snyder, D.C., Inc.) with copies of a document prepared by Dr. Schulze wherein Dr. Schulze set forth his opinion that Dr. Sveda should not have recommended that Savage continue chiropractic manipulation therapy.

Appellants deposed several witnesses during the discovery process. Dr. Schulze was deposed on October 9, 1989. In his deposition, Dr. Schulze testified regarding his opinion that Dr. Sveda deviated from the accepted standards of medical care by recommending that Savage continue chiropractic manipulation therapy. Dr. Schulze also testified that Savage's cauda equina syndrome resulted from an acute disk herniation caused by the chiropractic manipulation performed on May 14, 1987. Dr. Schulze also stated that he was prepared to testify concerning the causal connection between Sveda's recommendation and Savage's medical problems. Appellants questioned Dr. Schulze as to whether he was prepared to give his expert testimony at trial on any issue other than the standard of care exercised by Dr. Sveda and the cause of Savage's cauda equina syndrome. In response, Dr. Schulze stated, in part: "I'm an orthopedic [surgeon] and questions that may be asked within the realm of my care of the patient and orthopedic care of the patient in general, I would be qualified to answer that."

A jury trial in this case was scheduled to commence on October 23, 1989. That morning, Dr. Schulze reexamined Savage. Thereafter, counsel for Drs. Shimmel and Snyder and David W. Snyder, D.C., Inc. moved the trial court to limit Schulze's forthcoming trial testimony to those matters which Schulze had testified to during his October 9, 1989 deposition. These appellants claimed that Schulze was prepared to offer, at trial, new and previously undisclosed opinions on matters such as Savage's future employability. In response, appellees argued that Schulze's so-called new opinions could have been discovered during Schulze's deposition, but that appellants did not ask for Schulze's opinions on these matters. The trial court agreed with appellees and denied appellants' motion.

Appellants were permitted to conduct a voir dire examination of Dr. Schulze before Schulze testified at trial. During voir dire, Schulze testified concerning several matters which were not covered during his October 9, 1989 deposition. Counsel for the chiropractic appellants again moved to exclude Schulze's testimony on these matters. This motion was denied as was a motion for a mistrial. Thereafter, Schulze testified at trial that he and Savage had discussed Savage's need to self-catheterize; that Savage continued to experience loss of sensation in his lower extremities; that a causal relationship existed between Savage's condition and his inability to engage in sexual relations with his wife; and that Savage could not be expected to return to gainful employment.

In addition to these matters, Dr. Schulze testified (as he did at his deposition) that Dr. Sveda had deviated from the accepted standards of medical care and that Savage's cauda equina syndrome was caused by the chiropractic manipulation performed on May 14, 1987. Schulze also testified as to the causal relationship between Sveda's recommendation and Savage's

condition.  Thereafter, counsel for the chiropractic appellants moved for a thirty-day continuance in order to have Savage independently physically examined.  This motion was denied.  However, the record indicates that the trial court was willing to permit appellants to have Savage independently examined provided that no continuance was necessary.

At the close of appellees' case-in-chief, CHS was granted a motion for a directed verdict.  Following the presentation of all the evidence, the trial court ruled that Step

hen J. Sveda, M.D., Inc., and David W. Snyder, D.C., Inc. would be liable for any negligence the jury might find against Drs. Sveda and Snyder, respectively.

The jury returned its verdicts in favor of appellees and against Drs. Sveda, Snyder and Shimmel. The total jury award of $1,185,000 represented $535,000 in economic damages, $500,000 in non-economic damages and $150,000 for Anna Savage's claim.

On November 28, 1989, the trial court conducted a hearing to determine whether (and by how much, if any) the jury's award against Dr. Sveda and Stephen J. Sveda, M.D., Inc., should be reduced pursuant to the provisions of R.C. 2305.27 (collateral source) and 2307.43 (medical malpractice "cap" on damages). On December 29, 1989, the trial court issued an amended judgment order which stated, in part:

"The Court finds that as against * * * [Dr. Sveda and Stephen J. Sveda, M.D., Inc.], the verdict should be limited to Five Hundred Thirty-Five Thousand Dollars ($535,000.00) economic damages, plus Two Hundred Thousand Dollars ($200,000.00) general damages. This amount represents a reduction of the jury's award of One Million Thirty-five Thousand Dollars workman's [sic] compensation benefits to be received by Edward Savage ($25,971.00) and by the present value of Social Security benefits to be received by Edward Savage ($109,439.00). This amount also represents a limitation on the recovery of general damages to $200,000.00. The Court further finds that the verdict in favor of Plaintiff, Anna Savage, is not subject to any limitation or reduction provision."

Accordingly, the trial court entered judgment (imposing joint and several liability) against Drs. Shimmel and Snyder and David W. Snyder, D.C., Inc. for $1,185,000, and against Dr. Sveda and Stephen J. Sveda, M.D., Inc. for the reduced amount of $885,000.

Appellants appealed to the court of appeals, claiming that the trial court erred in permitting Dr. Schulze to testify at trial concerning Savage's impotence, inability to work, and need to self-catheterize. The chiropractic appellants argued that the trial court erred in failing to grant their motion to limit the testimony of Schulze and in failing to grant their motions for a continuance, for a mistrial or for a new trial. Appellees cross-appealed, setting forth three assignments of error:

"1. The trial court erred in directing a verdict for defendant Correlated Health Services, Ltd.

"2. The trial court erred in applying to the plaintiffs' verdict the $200,000 general damages 'cap' of R.C. 2307.43.

"3. The trial court erred in applying to the plaintiffs' verdict the damages award reduction provisions of R.C. 2305.27."

The court of appeals affirmed the judgment of the trial court, but did not address appellees' assignments of error on cross-appeal.

The cause is now before this court pursuant to the allowance of motions and a cross-motion to certify the record.

Scanlon & Gearinger Co., L.P.A., Timothy F. Scanlon and Kevin P. Hardman, for appellees and cross-appellants.

Poland & Poland and James E. Poland, for cross-appellee Correlated Health Services, Ltd.

Jacobson, Maynard, Tuschman & Kalur, Michael M. Djordjevic and Craig A. Grimes, for appellants and cross-appellees Stephen J. Sveda, M.D., and Stephen J. Sveda, M.D., Inc.

Buckingham, Doolittle & Burroughs and Donald A. Powell, for appellants David W. Snyder, D.C., David W. Snyder, D.C., Inc. and Michael Shimmel, D.C.

Douglas, J.   Appellants' appeals in this case involve Dr. Schulze's trial testimony concerning Savage's impotence, inability to work, need to self-catheterize, and loss of sensation in his feet.  Appellants argue that Schulze testified as an expert witness concerning these matters and that his "opinions" on these issues were not discoverable prior to trial.  Appellants claim tha

t they were unfairly surprised or "ambushed" by Schulze's testimony and that, therefore, the trial court abused its discretion in failing to grant the various motions to prohibit or limit Schulze's "surprise" testimony, or in failing to grant a continuance. Appellees' cross-appeal against CHS, Dr. Sveda and Stephen J. Sveda, M.D., Inc., claiming that the court of appeals erred in failing to address the merits of appellees' assignment of errors in the court of appeals.

## I
### Appellants' Appeals

With respect to appellants' claims of "surprise" and of "trial by ambush," we agree with the trial court and the court of appeals that appellants were not unfairly surprised by the trial testimony of Dr. Schulze. We find that the trial court did not abuse its discretion in admitting Dr. Schulze's testimony at trial or in failing to grant a continuance, a mistrial, or a new trial.

Appellants knew of the severity and permanency of Savage's injuries prior to trial. Savage was deposed on April 28, 1988, and again on September 5, 1989. In his depositions, Savage testified concerning his impotence, need to self-catheterize, numbness in the lower extremities, and inability to walk in a "normal way." Savage described himself as "handicapped." Several medical witnesses were also deposed before trial concerning the effects of cauda equina syndrome. The deposition testimony of these witnesses informed appellants that Savage's known medical problems associated with cauda equina syndrome were permanent and irreversible. The injury to Savage was done (and his prospects for recovery ended) within hours of the May 14, 1987 chiropractic manipulation. Accordingly, it is clear that the information provided by Schulze's trial testimony did not catch appellants by surprise.

Furthermore, it is evident that appellants were provided with a document during discovery which indicated that Dr. Schulze's prognosis for Savage in July 1987 was that Savage had reached an "end stage" in terms of recovery. Schulze described Savage's condition as severe and irreversible. This document further indicates that Schulze's prognosis was that Savage would never again be able to walk without the aid of a walking device. During Schulze's October 9, 1989 deposition, appellants could have inquired as to Schulze's opinions concerning Savage's physical condition and his ability to return to gainful employment. Schulze's testimony on these issues was fairly predictable. For whatever reason, appellants chose not to inquire of Schulze concerning these matters.

Upon a complete review of the record before us, we are convinced that the trial court and court of appeals correctly determined that appellants were not prejudiced by Schulze's trial testimony. The information provided by Schulze's trial testimony and his opinions on these matters were all discoverable prior to trial. Accordingly, we affirm the judgment of the court of appeals on this issue.

## II
### Appellees' Cross-Appeal

On cross-appeal, appellees have briefed and argued the issues which were assigned as error in their cross-appeal to the court of

appeals.  The court of appeals, relying on App.R. 12(B), did not address the merits of appellees' assignments of error.  We find that the court of appeals erred in this regard.  Under these circumstances, we would normally remand this cause to the court of appeals for compliance with App.R. 12(A).  However, appellees' arguments concerning the constitutionality of R.C. 2305.27 and 2307.43 have recently been addressed by this court.  A remand to the court of appeals on these issues is unnecessary.

In Morris v. Savoy (1991), 61 Ohio St.3d 684, 576 N.E.2d 765, this court determined that R.C. 2307.43 was unconstitutional. Savoy controls the determination of that issue in this case. Furthermore, a majority of this court adheres to the position that R.C. 2305

.27 is constitutional.  See Savoy, supra, and Hodge v. Middletown Hosp. Assn. (1991), 62 Ohio St.3d 236, 581 N.E.2d 529.  We note, however, that the collateral sources of recovery in this case are workers' compensation and Social Security benefits.  In this regard, R.C. 2305.27 provides, in part:  "* * * in any medical claim, * * * an award of damages shall not be reduced by insurance proceeds or payments or other benefits paid under any insurance policy or contract where the premium or cost of such insurance policy or contract was paid either by or for the person who has obtained the award, or by his employer, or both, or by direct payments from his employer, but shall be reduced by any other collateral recovery for medical and hospital care, custodial care or rehabilitation services, and loss of earned income.  * * *"

As Justice Sweeney stated in his concurring and dissenting opinion in Savoy, supra:  "The laws governing workers' compensation establish a mandatory insurance scheme whereby employers must pay for 'insurance' coverage to compensate their employees for injuries sustained during the course of employment. Thus, workers' compensation benefits constitute (within the meaning of R.C. 2305.27) payments under an insurance policy or contract where the premium or cost of the policy is paid for by the employer of the person who obtains the award.  Hence, pursuant to R.C. 2305.27, workers' compensation benefits cannot be set off against a damage award."  Id., 61 Ohio St.3d at 713, 576 N.E.2d at 786.  We agree with Justice Sweeney's assessment of this issue.

Furthermore, in Hodge, supra, syllabus, we held that: "Medicare Part A benefits fall under the definition of 'insurance' in R.C. 2305.27, and therefore do not reduce medical malpractice damage awards."  We believe that Social Security benefits are akin to workers' compensation and Medicare Part A benefits in that all such benefits constitute (within the meaning of R.C. 2305.27) "* * * insurance proceeds or payments or other benefits paid under any insurance policy or contract where the premium or cost of such insurance policy or contract was paid either by or for the person who has obtained the award, or by his employer, or both * * *."  Accordingly, we hold that workers' compensation and Social Security benefits fall under the definition of "insurance" in R.C. 2305.27, and therefore do not reduce medical malpractice damage awards.

The final issue, whether CHS was entitled to a directed verdict, is remanded to the court of appeals for compliance with App.R. 12(A).

III
Conclusion

We affirm the judgment of the court of appeals in part, and we reverse it in part.  This cause is remanded to the court of appeals to decide the issue whether the trial court erred in directing a verdict in favor of CHS.  Thereafter, we order that the court of appeals remand this cause to the trial court for reinstatement, in all respects, of the jury verdict as to appellants and, if appropriate, also with respect to CHS.

Judgment affirmed in part,
reversed in part
and cause remanded

with instructions.

Sweeney and Resnick, JJ., concur.

H. Brown, J., concurs in part and dissents in part.

Moyer, C.J., Holmes and Wright, JJ., dissent.

Herbert R. Brown, J., concurring in part and dissenting in part.   I concur with Part I of the majority opinion, but cannot join in most of Part II.

In Morris v. Savoy (1991), 61 Ohio St.3d 684, 576 N.E.2d 765, this court determined that R.C. 2305.27 is constitutional.   In Hodge v. Middletown Hosp. Assn. (1991), 62 Ohio St.3d 236, 581 N.E.2d 529, we determined that Medicare Part A benefits are "insurance" for purposes of the statute, and therefore do not reduce medical malpractice damage awards.

The collateral sources of recovery in this case are workers' compensation and

Social Security benefits.  The majority holds that both are "insurance" under the definition in R.C. 2305.27.  These issues are not before the court at this time.  No party to this case has assigned them as error, nor were they briefed and argued before us.  Only the constitutionality of R.C. 2305.27 was briefed by cross-appellants and cross-appellees.  Though tempting, it is inappropriate to reach for issues not raised by the litigants.

Holmes, J., dissenting.   I dissent from Part I of the majority's opinion as explained in Part I of my analysis below.  Furthermore, I believe three Justices have attempted to leap-frog to a predetermined result, although unsuccessfully, as noted in Part II of my dissent.  The primary issue before this court is whether the trial court erred in admitting certain testimony by Dr. Kenneth Schulze without granting appellants either a continuance, motion to limit or exclude Dr. Schulze's testimony, or a mistrial.  For the reasons that follow, I would answer the above query in the affirmative, and further believe that three Justices (who comprise Part II of the lead opinion) have attempted unwarrantedly to reach issues not properly before this court.

I

Trial by Ambush; Civ.R. 26

The pertinent facts giving rise to the issue of Dr. Schulze's testimony are as follows.  After being treated by Dr. Shimmel on May 14, 1987, Savage lost bladder and bowel control.  On May 16, 1987, Savage was taken to Robinson Memorial Hospital.  Thereafter, on May 21, 1987, Dr. Schulze performed decompression surgery on Savage to relieve his symptoms associated with cauda equina syndrome.

Dr. Schulze last treated Savage sometime in July 1987.[1]  In preparation for trial, as part of the discovery process, appellants were given a copy of what has been purported to be Dr. Schulze's medical report dated March 3, 1989.  Dr. Schulze was deposed on October 9, 1989.

On October 23, 1989, the day the trial began, Dr. Schulze reexamined Savage for purposes of developing a report.  Prior to the taking of evidence and jury selection, certain appellants moved the trial court to limit the forthcoming testimony of Dr. Schulze for the reason that they believed he was going to give testimony concerning new opinions that were not previously disclosed to appellants during the discovery process.  Appellees countered by noting that the new opinions could have been discovered during the October 9, 1989 discovery deposition of Dr. Schulze, but that counsel for appellants had chosen not to develop this area in examining Dr. Schulze.  The trial court agreed with appellees and denied appellants' motion.

The trial court conducted a voir dire of Dr. Schulze immediately prior to his testimony at trial, where the following was elicited by Donald Powell, defense counsel to Drs. Snyder and Shimmel:

"[Mr. Powell] Q. All right.  Now, Doctor, when was the last time that you saw Mr. Savage?

"[Dr. Schulze] A. On Monday of this week.

"Q. And, Doctor, did you arrive at any opinions as a result of seeing him on Monday of this week?

"A. Well, I would have to say so, yes.

"***

"Q. *** Now, Doctor, when you last saw him in July of 1987 had you formed any opinions about this loss of sensation in his feet?

"A. I don't recall that I addressed that consideration at that time.

"Q. Had you formed any opinions about his need to use a catheter in July of '87?

"A. I would have to say no.

"Q. So it's fair to assume that you formed those opinions as a result of seeing him on Monday of this week?

"A. It's quite fair to assume that.

"Q. October 23rd of this week?

"A. That would be correct.

"Q. All right.  Now, with respect to his employability have you formed some opinion on Monday of this week concerning his employability?

"A. I believe I testified that I had.

"Q. All right.  And what is that opinion?

"A. My opinion is that *** he could not e

xpect to return to gainful employment.

"Q. Again. Doctor, in all fairness you arrived at that opinion on October 23rd of this week?

"A. Yes sir.

"Q. You did not arrive at that opinion in July of '87?

"A. I believe it would have been inappropriate at that time.

"Q. Now, Doctor, with respect to his problems concerning his wife you didn't have any opinions in July of '87 about that, did you?

"A. I don't have recollection of having those kind[s] of opinions at that time.

"Q. Again, you arrived at the opinions concerning his relations with his wife as a result of the examination on October 23rd of this week; is that correct?

"A. That's correct."

Thus, as Dr. Schulze admitted at trial, he arrived at four new conclusions on Savage's health that were not expressed or held previously at his October 9, 1989 deposition. Specifically, Dr. Schulze observed that Savage had a loss of sensation in his feet, a need for self-catheterization, an inability to return to employment, and difficulty in having relations with his wife.

The trial court, after hearing voir dire, denied appellants' motion to exclude the new opinions held by Dr. Schulze. Moreover, the court denied appellants' motion for a mistrial. Further, the court refused to grant a thirty-day continuance in order that appellants could provide rebuttal testimony concerning, among other things, Savage's impotency. Thereafter, Dr. Schulze testified at trial on the same matters covered in his voir-dire testimony, which was not limited to opinions previously expressed at his October 9, 1989 deposition.

With respect to the proper discovery procedure to be followed in civil trials, Civ.R. 26(B) provides in pertinent part:

"(4) Trial preparation: experts.

"***

"(b) As an alternative or in addition to obtaining discovery under subdivision (B)(4)(a) of this rule, a party by means of interrogatories may require any other party (i) to identify each person whom the other party expects to call as an expert witness at trial, and (ii) to state the subject matter on which the expert is expected to testify. Thereafter, any party may discover from the expert or the other party facts known or opinions held by the expert which are relevant to the stated subject matter. Discovery of the expert's opinions and the grounds therefor is restricted to those previously given to the other party or those to be given on direct examination at trial."

Moreover, Civ.R. 26(E) requires parties to supplement their responses under the following conditions:

"(1) A party is under a duty seasonably to supplement his response with respect to any question directly addressed to (a) the identity and location of persons having knowledge of discoverable matters, and (b) the identity of each person expected to be called as an expert witness at trial and the subject matter on which he is expected to testify.

"(2) A party who knows or later learns that his response is incorrect is under a duty seasonably to correct the response.

"(3)  A duty to supplement responses may be imposed by order of the court, agreement of the parties, or at any time prior to trial through requests for supplementation of prior responses."

This court in Jones v. Murphy (1984), 12 Ohio St.3d 84, 86, 12 OBR 73, 75, 465 N.E.2d 444, 446, stated with respect to the purposes behind the Civil Rules:

"One of the purposes of the Rules of Civil Procedure is to eliminate surprise.  This is accomplished by way of a discovery procedure which mandates a free flow of accessible information between the parties upon request, and which imposes sanctions for failure to timely respond to reasonable inquiries. ***"

In Jones, this court addressed the question of whether the trial judge had the discretion under the Civil Rules to exclude an expert's testimony when the party calling the expert had failed to identify the expert by supplementi

ng the party's interrogatory responses. This court upheld the trial judge's decision to exclude the expert's testimony under Civ. R. 37,2 since the trial court had found an intentional noncompliance with Civ.R. 26(E). Id. at 86, 12 OBR at 75, 465 N.E.2d at 446; see, also, Paugh & Farmer, Inc. v. Menorah Home for Jewish Aged (1984), 15 Ohio St.3d 44, 15 OBR 142, 472 N.E.2d 704 (trial court did not abuse its discretion in excluding an expert witness where the expert's report was not timely filed pursuant to Rule 21 of the Cuyahoga County Local Rules of Court).

A case similar to the one at bar was brought before the Cuyahoga County Court of Appeals in Jackson v. Booth Memorial Hosp. (1988), 47 Ohio App.3d 176, 547 N.E.2d 1203, where the cause of death of an alleged victim of medical malpractice was not known at the time of discovery, but was discovered after the deposition of defendants' expert witnesses. The defendants failed to inform the plaintiffs of the discovery prior to trial. The Jackson court reversed a defense verdict and reasoned:

"Thus, the elements of surprise and ambush become the focus with regard to whether a free flow of information between the parties has been disrupted by deliberate actions of one of the parties.

"Herein, the record does disclose that the [plaintiffs] appellants were surprised by the new theory of the cause of death as advanced by the [defendants'] appellees' experts at trial. In fact, the failure of the appellees to timely inform the appellants of the discovery of a new theory of cause of death smacks of ambush.

"*** Had the appellants been aware of the appellees' newly discovered theory of death, appellants' experts would have been able to effectively testify with regard to this counter-theory of death.

"***

"Initially, the trial court erred by not granting the appellants' motion in limine with regard to the testimony of the appellees' experts as to the cause of death not described during deposition. The trial court also erred by failing to sustain the appellants' objections to the testimony of the appellees' experts at trial with regard to preeclamptic shock. The appellants were clearly surprised and damaged by the failure of the appellees to reveal the newly discovered theory of preeclamptic shock prior to trial pursuant to Civ.R. 26(E)(2)." Id. at 179-180, 547 N.E.2d at 1206-1207.

In reference to Civ.R. 26(E)(1), this court noted in Shumaker v. Oliver B. Cannon & Sons, Inc. (1986), 28 Ohio St.3d 367, 370, 28 OBR 429, 431, 504 N.E.2d 44, 47, that:
"An objective of this rule is to provide opposing counsel with updated and complete discovery regarding the substance of expert testimony. This duty to supplement responses on the subject matter of expert testimony is necessary because preparation for effective cross-examination is especially compelling where expert testimony is to be introduced."

In Huffman v. Hair Surgeon, Inc. (1985), 19 Ohio St.3d 83, 19 OBR 123, 482 N.E.2d 1348, this court was presented with a party who notified opposing counsel five days prior to trial that a previously undisclosed expert witness along with a new theory would be presented at trial. The opposing counsel moved to

exclude the expert, and the court granted the request in the absence of any alternative sanction recommended by the parties. Id. at 84, 19 OBR at 124, 482 N.E.2d at 1249.  In affirming the trial court's sanction, this court reasoned:

"We recognize that both Jones and Paugh & Farmer involved instances of willful noncompliance.  However, the existence and effect of prejudice resulting from noncompliance with the disclosure rules is of primary concern, not just the intent or motive involved.  Appellee's conduct may well have been produced by neglect, a change in defense strategy or an inadvertent error. Nevertheless, the trial court reco

gnized it as a breach of duty giving rise to unfair surprise and concluded that the resulting prejudice could best be remedied by exclusion of the evidence. Civ.R. 26(E) and 37(B)(2)(b)." (Footnotes omitted.) Id. at 85, 19 OBR at 125, 482 N.E.2d at 1250.

Moreover, in Huffman we commented: "Additionally, although surprise is all but eliminated under the Civil Rules relating to discovery, an evidentiary basis has long been recognized for the exclusion of otherwise relevant evidence if its admission would result in 'unfair surprise' disproportionate to its probative value. ***" Id. at fn. 2. Thus, we have recognized previously that not only willful noncompliance but also unintentional or inadvertent violations of Civ.R. 26 can invoke sanctions under Civ.R. 37. Jones v. Murphy, supra, and Huffman v. Hair Surgeon, Inc., supra. However, not every violation of Civ.R. 26 will call for the drastic remedy of excluding an expert witness.3 Instead, the trial court should weigh the conduct of the party offering the expert witness along with the level of prejudice suffered by the opposing party attributable to the discovery violation, in order to determine the appropriate sanction.

In the case sub judice, the primary issue before the court is whether the trial court abused its discretion in not granting either a motion for a continuance, a motion to limit Dr. Schulze's testimony, or a motion to exclude Dr. Schulze altogether due to the potential prejudice to appellants. As we recently reiterated in Tracy v. Merrell Dow Pharmaceuticals (1991), 58 Ohio St.3d 147, 152, 569 N.E.2d 875, 880, "[a]buse of discretion connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. *** A reviewing court may not substitute its judgment for that of the trial court absent an abuse of discretion. ***" (Citations omitted.)

With the above standard of review noted as a threshold to this analysis, it must be determined whether Dr. Schulze was indeed testifying as an expert witness and/or as a treating physician when he testified on issues that were outside his previous deposition testimony given on October 9, 1989.

In an August 15, 1989 letter to opposing counsel, disclosing appellees' expert witnesses, Dr. Schulze was listed as a witness with the following explanation: "We will also call Kenneth Schulze, M.D., who is one of plaintiff's treating physicians. We may also employ an expert in the field of vocational rehabilitation." Appellees' counsel stated at oral argument in response to a query by this court that Dr. Schulze testified only as a treating physician. However, in appellees' brief before this court, they stated: "Dr. Schulze testified as both a medical expert and a treating physician, as the defendants were told he was going to so testify."4 Illustrative of the confusion as to Dr. Schulze's status as a witness was a comment made by Dr. Schulze at voir dire during questioning by the trial court:

"THE COURT: Doctor, are you the treating physician now for this Defendant or Plaintiff?

"THE WITNESS: I don't know how to answer that question. I have not treated him since July of 1987. I haven't in the strictest sense been discharged as his physician but I don't think I could say that I am actively treating him at this time."

After reviewing the balance of Dr. Schulze's October 9, 1989 deposition, voir dire, and trial testimony it is abundantly clear that he testified in pertinent part as an "expert" witness at trial.  This conclusion is premised in part on Dr. Schulze's response to the following question by attorney Powell (counsel for Drs. Snyder and Shimmel) at trial:

"[Mr. Powell] Q. Your role now is not to be -- no, my question was: Your role is not to be a treating physician at this point in time, it's to be an expert in

this courtroom, isn't it?

"[Dr. Schulze] A. Yes, I think that's fair."

In reviewing the record I find that Dr. Schulze clearly testified at voir dire that he did not form certain opinions until the day trial began. Moreover, Dr. Schulze testified that it would have been inappropriate for him to have formed certain opinions at any time prior to the first day of trial. Therefore, there was no way for appellees to adequately prepare for Dr. Schulze's new opinions. Appellants had no opportunity to conduct an effective cross-examination of Dr. Schulze regarding his newly formed opinions. Clearly, Dr. Schulze's testimony came as a surprise to appellants and was highly prejudicial.

Even though appellees provided expert testimony touching some of the same issues Dr. Schulze discussed, appellants were caught off guard by some of the new opinions not previously held by Dr. Schulze. As admitted by appellees, Dr. Schulze's testimony was the linchpin of their case and without it they could not proceed. Appellants requested both a continuance and an order in limine to limit these new opinions; however, the trial court unreasonably overruled both motions. Although I believe that Dr. Schulze should not have been excluded from the proceedings, clearly the trial court did abuse its discretion in not granting either appellants' motion in limine or motion for a continuance.

The majority's reliance on the fact that the trial court was willing to permit appellants to have Savage independently examined, provided that no continuance was granted, is totally misplaced. First, appellants could not have reasonably been expected to come up with an expert on such short notice. Also, it placed appellants at a disadvantage in having to prepare for cross-examination that was unexpected prior to trial.

The majority additionally has misconstrued the purpose behind Civ.R. 26 by its statement that "*** it is clear that the information provided by Schulze's trial testimony did not catch appellants by surprise." Again, the main objective of Civ.R. 26 is not to inform opposing counsel of the victim's condition, but instead is to specifically "provide opposing counsel with updated and complete discovery regarding the substance of expert testimony. This duty to supplement responses on the subject matter of expert testimony is necessary because preparation for effective cross-examination is especially compelling where expert testimony is to be introduced." (Emphasis added.) Shumaker, supra, 28 Ohio St.3d at 370, 28 OBR at 431, 504 N.E.2d at 47. The mere fact that Savage's condition may have been discoverable prior to trial in no way negated the obligation on the part of Savage's counsel, pursuant to Civ.R. 26(E), to seasonably notify appellants' counsel of the additional topics on which Dr. Schulze would testify at trial.

Therefore, I would reverse the court of appeals on this issue and remand for a new trial.

II

Jurisprudence

I agree that the issue with respect to the directed verdict in favor of CHS must be resolved by the court of appeals. On the cross-appeal concerning the constitutionality of R.C. 2307.43, my position would be to uphold the statute as I previously indicated

in my dissenting opinion in Morris v. Savoy (1991), 61 Ohio St.3d 684, 695-700, 576 N.E.2d 765, 774-777 (Holmes, J., concurring in part and dissenting in part). However, regarding this issue, by virtue of stare decisis, I must recognize that this court has already decided the unconstitutionality of the statute and consequently there is no need to remand the action for that purpose.

In reaching the issues of whether workers' compensation and Social Security benefits constitute "insurance" for purposes of R.C. 2305.27, three Justices have attempted to go too far. These issues were not treated in the court of appeals and have never been addresse

d by a majority of this court.  As Justice Wright stated in his concurring opinion in Schaefer v. Allstate Ins. Co. (1992), 63 Ohio St.3d 708, 723,    N.E. 2d  ,    (Wright, J., concurring in judgment only), "[e]ach time this court *** decides cases based upon issues neither raised by the parties nor considered by the courts below, we tread upon jurisprudential quicksand, and the more we thrash, the deeper we sink."  It is incumbent upon this court to remand the issues concerning R.C. 2305.27 to the court of appeals for determination.  However, since there is no majority among this court to either treat or remand to the court of appeals the collateral source issues, the appellees are now foreclosed from further challenging the trial court's decision to apply R.C. 2305.27 to reduce their award.  See H. Brown, J., concurring in part and dissenting in part, supra, at 63 Ohio St.3d at   ,    N.E.2d at    .

III
Workers' Compensation and Social Security
Benefits under R.C. 2305.27

I believe some observations are necessary in light of the dictum contained in Part II of the lead opinion (which is only joined by three Justices).  First, in reaching their conclusion that "[w]orkers' compensation and Social Security benefits fall under the definition of 'insurance' in R.C. 2305.27, and therefore do not reduce medical malpractice damages awards," three Justices have misapplied the result reached in Hodge v. Middletown Hosp. Assn. (1991), 62 Ohio St.3d 236, 581 N.E.2d 529, in order to annihilate R.C. 2305.27.  In fact, Hodge never addressed these issues.  Instead, this court held in Morris v. Savoy (1991), 61 Ohio St.3d 684, 693, 576 N.E.2d 765, 773, with respect to R.C. 2305.27, that:

"*** The language of the statute requires that '*** an award of damages *** shall be reduced by any other collateral recovery for medical and hospital care, custodial care or rehabilitation services, and loss of earned income.'  (Emphasis added.)  R.C. 2305.27.  The sole issue is the impact of the language on future workers' compensation payments the plaintiff could reasonably expect to receive and whether there should be an equivalent reduction in the jury's award *** for future lost wages.  Reading the language of the statute consistent with our finding that the legislature intended to eliminate certain types of double recovery, we find that future payments, to the extent they can be determined with a reasonable degree of certainty, can and should be deducted from the jury's verdict for future lost wages.  Such was the case here."

Furthermore, this court noted in Hodge, supra, that "R.C. 2305.27 was enacted as part of sweeping reform, as a response to a perceived malpractice insurance crisis."  Id., 62 Ohio St.3d at 240, 581 N.E.2d at 532; see, also, Morris v. Savoy, 61 Ohio St.3d at 693, 576 N.E.2d at 772; Holaday v. Bethesda Hosp. (1986), 29 Ohio App.3d 347, 348, 29 OBR 475, 477, 505 N.E.2d 1003, 1005.  However, the effect of Part II of the lead opinion in this case would be to render R.C. 2305.27 impotent.

IV
Conclusion

Accordingly, for the foregoing reasons I agree with the majority in reversing the judgment of the court of appeals and

remanding this cause to decide whether the trial court properly directed a verdict in favor of CHS. Furthermore, I would order that a new trial be held after that determination, in accordance with Part I of this dissent. Since Morris v. Savoy decided that R.C. 2307.43 is unconstitutional, the trial court would be prohibited from capping the damages. However, with respect to the collateral source issues under R.C. 2305.27, I would include them among the issues to be decided by the court of appeals on remand, on the authority of App.R. 12(A).

Moyer, C.J., and Wright, J., concur in the foregoing dissenting opinion.

FOOTNOTES:

1

Appellants were provided with a copy of a document during discovery which dated back to July 1987, when Dr. Schulze was still treating Savage. During this period Dr. Schulze met with appellees' counsel, Timothy F. Scanlon. Dr. Schulze relayed his prognosis for Savage as follows (as recorded by attorney Scanlon):

"From an orthopaedic standpoint, he believes Savage is probably at an 'end stage.' He describes the damage as 'severe and irreversible.' He is not going to recover much more muscle strength. Schulze has him going to physical therapy but he doesn't think it is going to do much good. He thinks Savage is always going to require a walker to get around."

2 Civ. R. 37 states in relevant part:

"(B) Failure to comply with order.

"(1) If a deponent fails to be sworn or to answer a question after being directed to do so by the court, the failure may be considered a contempt of that court.

"(2) If any party or an officer, director, or managing agent of a party or a person designated under Rule 30(B)(5) or Rule 31(A) to testify on behalf of a party fails to obey an order to provide or permit discovery ***, the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:

"***

"(b) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting him from introducing designated matters in evidence;

"(c) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party[.]"

3 As noted in Civ. R. 37, the trial court has far less drastic remedies available to it for discovery violations than excluding a party's expert witness. For example, the court could grant a continuance; or limit the testimony of the expert to items previously available during discovery that were timely provided to the opposing party.

4 In appellees' brief before this court it is ambiguous as to what Dr. Schulze's status (treating physician or expert witness) was when he testified at trial. Appellees attempted to make a legal distinction between a "treating physician" and an "expert medical" witness, and claim that Dr. Schulze's testimony was not subject to discovery since he was Savage's treating physician. However, appellees conceded in their brief and in their list of witnesses that at least for some purposes Dr. Schulze was an expert witness.