REED, Exr., Appellant,

v.

WEBER, Appellee.

[Cite as *Reed v. Weber* (1992), 83 Ohio App.3d 437.]

Court of Appeals of Ohio,
Hamilton County.

No. C–910548.

Decided Nov. 4, 1992.

438

*John E. Rockel,* for appellant.

*Kohnen, Patton & Hunt* and *Karen A. Carroll,* for appellee.

DOAN, Presiding Judge.

Plaintiff-appellant Dona Reed, executor of the estate of Raymond Reed, has taken the instant appeal from the entry of summary judgment for defendant-appellee James Weber on her complaint seeking damages for the wrongful death of her decedent. The appellant presents on appeal a single assignment of error in which she contends that summary judgment was improvidently entered for Weber when issues of fact remained as to whether Weber's performance of an incomplete cerebral angiogram study on the decedent constituted negligence and whether this negligence prevented identification of the aneurysm that caused the decedent's death.

On October 14, 1988, the decedent was admitted to a hospital by his family physician for treatment of a severe headache and hypertension. On October 15, a

CT scan was performed, and, on October 17, Dr. James Armitage, who served as consulting neurologist at the request of decedent's family physician, ordered Weber, a radiologist, to perform a cerebral angiogram. Weber's report on the decedent's angiogram, performed on October 18, stated that, "[f]ollowing digital arch aortogram and AP digital intracranial examination, selective injections were performed into the right common carotid artery, left common carotid artery and left vertebral artery." The report went on to detail Weber's specific findings and set forth the following "opinion": "Normal cerebral angiogram. There is no definite evidence of intracranial aneurysm or arterial venous malformation."

In an affidavit submitted in support of Weber's motion for summary judgment, Armitage stated that he reviewed the angiogram with Weber and that he understood that Weber had performed only a "three-vessel study" because he "was technically unable to visualize the right vertebral artery after repeated attempts and techniques." Armitage averred that, "[a]s the consulting neurologist, and with the understanding that the right vertebral artery had not been visualized, it was [his] best medical judgment that the angiogram did not need to be repeated during [the decedent's] October, 1988 hospitalization." Armitage further asserted that the decision of whether to "repeat" the angiogram was his and not Weber's and that, in his opinion, "Weber adhered to the standard of care applicable to radiologists under like or similar circumstances when he reviewed the angiogram films and reported the results to [Armitage] as the patient's consulting neurologist."

The decedent was discharged by his family physician on October 22, 1988. On November 16, 1988, the decedent died of a ruptured berry aneurysm of the right vertebral artery.

In September 1989, the appellant instituted a wrongful-death action against Weber, in which she charged that Weber's negligent failure in October 1988 to perform an angiogram that included visualization of the right vertebral artery prevented identification of the aneurysm that caused the decedent's death in November 1988. Upon Weber's motion and after a period for discovery, the trial court entered summary judgment for Weber, and this appeal ensued.

■■ Liability for negligence is predicated upon injury caused by the failure to discharge a duty owed to the injured party. *Moncol v. Bd. of Edn.* (1978), 55 Ohio St.2d 72, 9 O.O.3d 75, 378 N.E.2d 155. Thus, to sustain an action founded upon negligence, a plaintiff must demonstrate: (1) that the defendant had a duty, recognized by law, requiring him to conform his conduct to a certain standard for the protection of the plaintiff; (2) that the defendant failed to conform his conduct to that standard; and (3) that the defendant's conduct proximately caused the plaintiff to sustain actual loss or damage. See *id.* To sustain a claim for medical malpractice, the plaintiff must establish by expert testimony the standard of care

of a physician in the community and the physician's failure to provide care in conformity with that standard. *Bruni v. Tatsumi* (1976), 46 Ohio St.2d 127, 75 O.O.2d 184, 346 N.E.2d 673.

The trial court entered summary judgment for Weber upon its determination that "Armitage's decisions and/or actions constituted a superseding/intervening cause, relieving * * * Weber of any alleged liability for the incomplete nature of the angiogram study." Thus, the court effectively found that the appellant's claim against Weber failed on the issue of proximate cause.

 Negligent conduct is the "proximate cause" of an injury if the injury is the natural and probable consequence of the conduct. *Cascone v. Herb Kay Co.* (1983), 6 Ohio St.3d 155, 6 OBR 209, 451 N.E.2d 815. An injury is the natural and probable consequence of negligent conduct if the injury might and should have been foreseen. *Jeffers v. Olexo* (1989), 43 Ohio St.3d 140, 539 N.E.2d 614. An injury is foreseeable if a reasonably prudent person, under the same or similar circumstances, would have anticipated that injury to another was the likely result of his conduct. *Commerce & Industry Ins. Co. v. Toledo* (1989), 45 Ohio St.3d 96, 543 N.E.2d 1188.

 There may be more than one proximate cause of an injury. *Taylor v. Webster* (1967), 12 Ohio St.2d 53, 41 O.O.2d 274, 231 N.E.2d 870. When a defendant's conduct is negligent and the plaintiff's injury is the natural and probable consequence of that conduct, the fact that the negligence of others unites with the negligence of the defendant to cause injury does not relieve the defendant of liability. *Strother v. Hutchinson* (1981), 67 Ohio St.2d 282, 21 O.O.3d 177, 423 N.E.2d 467. However, an intervening act may break the causal connection between the defendant's negligence and an injury and thus absolve the defendant of liability if the intervening actor was a conscious and responsible agency that could or should have eliminated the hazard and the intervening cause was not reasonably foreseeable by the defendant. *Cascone, supra*, paragraph one of the syllabus (citing *Thrash v. U–Drive–It Co.* [1953], 158 Ohio St. 465, 49 O.O. 402, 110 N.E.2d 419, paragraph two of the syllabus). The test is "whether the original and successive acts may be joined together as a whole, linking each of the actors as to the liability, or whether there is a new and independent act or cause which intervenes and thereby absolves the original negligent actor." *Cascone, supra*, 6 Ohio St.3d at 160, 6 OBR at 214, 451 N.E.2d at 819 (citing *Mudrich v. Standard Oil Co.* [1950], 153 Ohio St. 31, 41 O.O. 117, 90 N.E.2d 859, and *Mouse v. Cent. Savings & Trust Co.* [1929], 120 Ohio St. 599, 167 N.E. 868). An intervening act is "new" if it came into active operation to produce an injury after the original negligence and could not reasonably have been foreseen. See *Crawford v. Sanwardeker* (Jan. 21, 1992), Stark App. No. CA–8288, unreported, 1992 WL 12797; *Savage v. Correlated Health Serv., Ltd.* (Oct. 17, 1990), Summit

App. Nos. 14491 and 14498, unreported, 1990 WL 163922, affirmed in part and reversed in part in (1992), 64 Ohio St.3d 42, 591 N.E.2d 1216; *Harris v. Middletown Radiologic Assoc.* (July 20, 1987), Butler App. No. CA86–05–069, unreported, 1987 WL 14316. An intervening act constitutes an "independent" cause if there was no connection or cause-and-effect relationship between the original and the subsequent negligence, *i.e.*, if the intervening act was capable of producing the injury irrespective of the original negligence, was not set in motion by the original negligence, and was not simply a condition on or through which the original negligence operated to produce the injurious result. See *Mudrich, supra*, 153 Ohio St. at 38, 41 O.O. at 120, 90 N.E.2d at 863 (citing *Mouse, supra*, 120 Ohio St. at 605, 167 N.E. at 870); *Grange Mut. Cas. Co. v. Fleming* (1982), 8 Ohio App.3d 164, 8 OBR 223, 456 N.E.2d 816; see, also, *Shope v. Harlan Tel. Co.* (Dec. 9, 1991), Warren App. No. CA90–12–082, unreported, 1991 WL 261662; *Savage, supra; Harris, supra.*

■ The determination of whether negligent conduct was the proximate cause of an injury or whether an intervening act operated to break the chain of causation presents a question of fact. *Strother, supra.* The issue of proximate cause may, however, be determined as a matter of law pursuant to a motion for summary judgment if the court, upon viewing the inferences to be drawn from the underlying facts set forth in the pleadings, depositions, answers to interrogatories, written admissions, and affidavits in a light most favorable to the party opposing the motion, determines (1) that no genuine issue of material fact remains to be litigated, (2) that the moving party is entitled to judgment as a matter of law, and (3) that the evidence demonstrates that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party opposing the motion. Civ.R. 56(C); see, also, *Ornella v. Robertson* (1968), 14 Ohio St.2d 144, 43 O.O.2d 246, 237 N.E.2d 140; *Reese v. Minor* (1981), 2 Ohio App.3d 440, 2 OBR 534, 442 N.E.2d 782.

■ As we noted *supra*, Armitage, in his affidavit submitted in support of Weber's motion for summary judgment, effectively espoused the position that Weber had no duty to "repeat" the angiogram because that decision was properly one for the consulting neurologist and not one for the radiologist. The appellant submitted in opposition to the motion for summary judgment two affidavits and the deposition of Robert I. Grossman, a professor of radiology and section chief of neuradiology at the Hospital of the University of Pennsylvania. Grossman therein expressed his opinion that the aneurysm that caused the decedent's death was present on October 15, 1988, when Weber performed the angiogram; that, in cases such as that of the decedent, a four-vessel study was essential; that Weber's performance of the angiogram fell below the requisite standard of care when he failed to visualize adequately all four cerebral vessels and then failed to

"redo" the inadequate study; and that Weber's failure to visualize the right vertebral artery prevented detection of the aneurysm and precluded any possibility of remedial action.

Viewing the evidence presented below in the light most favorable to the appellant, we find that there remains a genuine issue of fact that is material to the dispositive issue of whether Armitage's conduct constituted an intervening cause. Accepting, as we must, Grossman's statement of the breadth of Weber's duty to the decedent in performing the angiogram, we are precluded from a determination as a matter of law that Armitage's conduct operated independently to break the causal connection between Weber's negligence and the decedent's death when Weber must be said to share with Armitage responsibility for the inadequacy of the angiogram. We, therefore, hold that summary judgment was improvidently granted in favor of Weber. Accordingly, we sustain the appellant's sole assignment of error, reverse the judgment entered below and remand this matter to the trial court for further proceedings consistent with law and this decision.

*Judgment reversed*
*and cause remanded.*

SHANNON and UTZ, JJ., concur.