DOWNS, Appellee,

v.

QUALLICH, Appellant.

[Cite as *Downs v. Quallich* (1993), 90 Ohio App.3d 799.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 62881.

Decided Oct. 4, 1993.

800

*Weiner & Suit Co., L.P.A.,* and *Jeffrey H. Spiegler,* for appellee.

*Jacobson, Maynard, Tuschman & Kalur, R. Mark Jones* and *Steven J. Hupp,* for appellant.

SPELLACY, Presiding Judge.

This is an appeal from a medical malpractice action where the jury returned a verdict for Harry E. Downs, Jr., plaintiff below. Leonard G. Quallich, M.D., defendant below, appeals the denial of his motions for judgment notwithstanding the verdict, new trial, and partial directed verdict. Downs appeals the denial of his motion for prejudgment interest. Quallich raises three assignments of error:

"I. The trial court erred when it denied defendant's motion for judgment notwithstanding the verdict, or in the alternative, for a new trial, because the jury's only negligence finding was based on surprise expert testimony concerning a new theory of negligence undisclosed by plaintiff before trial.

"II. The trial court erred when it denied defendant's motion for partial directed verdict and permitted the jury, over objection, to consider and award damages that were speculative and unsupported by expert medical testimony.

"III. The trial court erred when it denied defendant's motion for new trial because the jury's excessive verdict was arrived at through the influence of passion and prejudice."

Downs raises one assignment of error:

"The trial court committed prejudicial error in summarily denying plaintiff's motion for prejudgment interest without first permitting plaintiff to obtain discovery on the issue and without first conducting an evidentiary hearing."

We find Quallich's first assignment of error lacks merit and his second assignment of error has merit. We further find Quallich's third assignment of error and Downs' sole assignment of error moot. As a result, we reverse the judgment and remand the cause for further proceedings.

I

Downs brought this action after Quallich perforated his colon while performing a colonoscopy, a procedure in which a colonoscope is passed into the colon through the rectum.

In his initial report, Downs' expert, Dr. Stuart Battle, stated Quallich deviated from acceptable standards of care by performing the colonoscopy without the proper degree of skill and without exercising due care.

At his deposition, Battle criticized the amount of anesthetic administered to Downs. Battle testified that a patient undergoing a colonoscopy must be in a state of "cooperative somnolence" so the patient will complain if the operator pushes the colonoscope too hard. Battle also stated that oversedation is the most

common cause of perforated colons during colonoscopies. Asked whether Downs was oversedated, Battle testified at deposition:

"Well, I don't have much evidence of that. I think I was told that during this colonoscopy Harry Downs felt that he was more completely knocked out than his previous colonoscopies, but that again is a subjective thing and I am reluctant to hang my opinion on that."

Battle further testified that unless Downs's deposition testimony contained surprises, his opinion was complete.

At deposition, Downs testified that he was asleep during the colonoscopy, woke briefly when he felt pain, and then fell asleep again. He further stated that he did not indicate to Quallich that he felt pain.

In his trial brief, Downs asserted that Quallich deviated from acceptable standards of care by pushing too hard on the colonoscope and oversedating him.

At trial, Battle testified that perforating a healthy colon, such as Downs's, constituted a deviation from acceptable standards of care. Dr. Battle went on to testify that Quallich oversedated Downs, preventing him from complaining when Quallich pushed the colonoscope too hard.

When asked whether Downs's loose stool and incontinence were proximately caused by the perforated colon and corrective surgery, Battle testified at trial:

" * * * all I can say about that is that it's very difficult to explain medically, either anatomically or physiologically how removing four inches of his colon would produce a degree of fecal incontinence, that's difficult to explain.

"However, on a temporal basis, in terms of time sequence to my knowledge as I sit here today I have no other—no evidence that Mr. Downs has had any other problems, nothing else healthwise has come into the picture. So logically it would seem as though the operations on his colon, the whole business may very well be related to the incontinence, but I as I [sic] physician, surgeon who takes out people's colons frequently have no anatomic or physiologic explanation for that. It seems to have happened with Mr. Downs. This occurred. That's my best explanation."

The jury returned a $600,000 verdict for Downs, finding Quallich deviated from acceptable standards of care by oversedating him, resulting in pain, suffering, mental anguish, embarrassment, lost wages, and future health risks.

After trial, the trial court denied motions filed by Quallich for judgment notwithstanding the verdict or, in the alternative, a new trial and a motion filed by Downs for prejudgment interest.

## II

In his first assignment of error, Quallich contends the trial court erred when it denied his motions for judgment notwithstanding the verdict or new trial based on Battle's testimony that Quallich oversedated Downs.

Quallich asserts that he was subjected to a "trial by ambush" because he was unable to adequately respond to a new theory of negligence presented by Downs. Quallich argues Battle's testimony concerning the oversedation should have been excluded under Civ.R. 26(E) and Loc.R. 21.1(B) of the Common Pleas Court of Cuyahoga County, General Division.

Civ.R. 26(E) provides:

"A party who has responded to a request for discovery with a response that was complete when made is under no duty to supplement his response to include information thereafter acquired, except as follows:

"(1) A party is under a duty seasonably to supplement his response with respect to any question directly addressed to * * * (b) the identity of each person expected to be called as an expert witness at trial and the subject matter on which he is expected to testify.

"(2) A party who knows or later learns that his response is incorrect is under a duty seasonably to correct the response."

Loc.R. 21.1(B) provides:

"A party may not call an expert witness to testify unless a written report has been procured from the witness and provided to opposing counsel. It is counsel's responsibility to take reasonable measures, including the procurement of supplemental reports, to [e]nsure that each report adequately sets forth the expert's opinion. However, unless good cause is shown, all supplemental reports must be supplied no later than thirty (30) days prior to trial. The report of an expert must reflect his opinions as to each issue on which the expert will testify. *An expert will not be permitted to testify or provide opinions on issues not raised in his report.*" (Emphasis added.)

We review rulings on Civ.R. 26(E) and Loc.R. 21.1(B) for abuse of discretion. See *Savage v. Correlated Health Serv., Ltd.* (1992), 64 Ohio St.3d 42, 47, 591 N.E.2d 1216, 1219–1220; *Tracy v. Merrell Dow Pharmaceuticals, Inc.* (1991), 58 Ohio St.3d 147, 152, 569 N.E.2d 875, 880–881; *Pang v. Minch* (1990), 53 Ohio St.3d 186, 559 N.E.2d 1313, paragraph one of the syllabus. "Abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Tracy,* 58 Ohio St.3d at 152, 569 N.E.2d at 880–881.

Reviewing the record, we find that the admission of Battle's testimony did not prejudice Quallich. From Battle's deposition testimony, Quallich knew that the doctor considered oversedation a common cause of perforated colons. Quallich also knew that Battle found the amount of anesthetic administered to Downs surprisingly high. Finally, Quallich knew that Downs testified at his deposition that he had been "asleep" during the colonoscopy. We find, therefore, that the trial court did not abuse its discretion when it concluded that Battle's report and deposition testimony contained correct responses and sufficiently set forth the subject matter on which he was expected to testify.

Accordingly, Quallich's first assignment of error is not well taken.

### III

In his second assignment of error, Quallich contends the trial court erred when it denied his motion for directed verdict on Downs's claimed damages for loose stools and incontinence.

■ A trial court must grant a motion for directed verdict when, after construing the evidence most strongly in favor of the party opposing the motion, it finds reasonable minds could only come to a conclusion adverse to that party. *The Limited Stores, Inc. v. Pan Am. World Airways, Inc.* (1992), 65 Ohio St.3d 66, 73, 600 N.E.2d 1027, 1033.

■ Medical expert testimony must establish proximate cause to a level of probability. *Shumaker v. Oliver B. Cannon & Sons, Inc.* (1986), 28 Ohio St.3d 367, 369, 28 OBR 429, 430–431, 504 N.E.2d 44, 46–47.

■ Construing the evidence most strongly for Downs, we find Battle's testimony concerning whether Downs's loose stools and incontinence were proximately caused by the perforation of Downs's colon and corrective surgery did not reach the level of probability. Reasonable minds, therefore, could only find for Quallich on this issue. Thus, the trial court erred when it denied Quallich's motion for partial directed verdict.

Downs argues any error is harmless because the jury did not base its verdict on his loose stools and incontinence. The jury found, however, that Downs suffered, among other things, embarrassment. This element of damages was directly linked to Downs's loose stools and incontinence.

Accordingly, Quallich's second assignment of error is well taken.

### IV

In his third assignment of error, Quallich contends the trial court erred when it denied his motion for new trial based on damages. In his only assignment of

error, Downs contends the trial court erred when it denied his motion for prejudgment interest.

Our ruling on Quallich's second assignment of error renders these assignments of error moot. See App.R. 12.

The judgment of the trial court is reversed and the cause is remanded for further proceedings.

*Judgment reversed*
*and cause remanded.*

BLACKMON and HARPER, JJ., concur.