WALWORTH, Appellee and Cross–Appellant,

v.

BP OIL COMPANY, a.k.a. BP America, Inc., Appellant and Cross–Appellee.

[Cite as *Walworth v. BP Oil Co.* (1996), 112 Ohio App.3d 340.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

Nos. 69610 and 69901.

Decided July 1, 1996.

*Schulman, Schulman & Meros* and *Howard A. Schulman*, for appellee and cross-appellant.

*Rademaker, Matty, McClelland & Greve* and *Robert C. McClelland*, for appellant and cross-appellee.

PATTON, Judge.

A jury awarded plaintiff Tracey Walworth damages of $128,000. as compensation for emotional injuries she sustained after being abducted from a service station operated by defendant BP Oil Company, a.k.a. BP America, Inc. ("BP"). The trial court denied several posttrial motions by BP and further denied plaintiff's request for prejudgment interest. Both parties appeal.

At the time of her abduction, plaintiff worked as a nanny. On March 4, 1992, while driving her employer's car, plaintiff entered a BP service station in the city of Cleveland Heights. She left her employer's one-year-old child in the car and

began to pump gasoline. A vagrant named Donald Holly approached plaintiff as she pumped gasoline and asked her for money. Plaintiff replied that she had no ready cash, just her employer's gasoline credit card. Plaintiff finished filling her tank and entered the convenience store area of the service station. Holly followed and persisted in asking for money. When plaintiff again refused, Holly asked for a ride. Plaintiff continued to put Holly off, and the BP attendant suggested that plaintiff buy Holly something to eat or drink. Plaintiff did so, using her employer's gasoline credit card to pay for coffee and a sweet roll.

Holly left the convenience store section of the service station and began walking toward plaintiff's car. Plaintiff became worried and asked the attendant to call the police. She ran to her car, asking a nearby customer to help her. Plaintiff jumped in her car, while at the same time Holly entered the car through the passenger door. He told her to drive and placed his hand in his pocket in a way that made plaintiff believe that he might have a weapon in his hand. Thinking that Holly might throw his coffee on her employer's child, plaintiff obeyed and pulled out of the service station.

They drove for ten to fifteen minutes and Holly continued to ask plaintiff for money. Not until plaintiff mentioned that her grandfather was the chief of the Cleveland Police Department did Holly ask plaintiff to let him leave the car.

Plaintiff later filed a police report in which she described her assailant.[1] It turned out that Holly habitually panhandled customers at the BP station, asking them to buy him coffee and sweet rolls. The attendant on duty the day of plaintiff's abduction testified that in the month prior to the offense, she had asked Holly to leave the premises a couple dozen times. The BP attendants were under orders to tell Holly to leave the premises and if he failed to comply, to call the police. On the day of the offense, the attendant on duty told plaintiff that she did not know Holly, but suggested that plaintiff buy Holly some coffee and sweet roll to stop his harassment. The attendant acknowledged that plaintiff appeared to be shaken by Holly's panhandling, but failed to telephone the police when she saw Holly get into plaintiff's car.

On March 8, 1994, plaintiff filed a complaint against BP alleging that its staff negligently failed to remove Holly from the premises in order to prevent a third-party criminal act. BP subsequently filed a motion for summary judgment in which it sought summary judgment on grounds that plaintiff failed to file her complaint within the two-year statute of limitations set forth in R.C. 2305.10 and that it had no duty to anticipate Holly's criminal acts. Plaintiff conceded that she

---

1. Holly later pleaded no contest to a charge of abduction in violation of R.C. 2905.03 in case No. CR–279783. The trial court placed Holly on three years' probation with the mentally disordered unit.

did not file her complaint in a timely manner, but opposed the motion, arguing that principles of equitable estoppel barred BP from raising the limitations defense since she filed her complaint in reliance upon representations BP's insurance adjuster had made as to the date of the incident.

The trial court denied the motion for summary judgment and proceeded to conduct an oral hearing on the statute of limitations issue. The trial court subsequently denied that motion as well. The matter proceeded to trial and a jury awarded plaintiff damages of $160,000, but reduced that award by twenty percent, the amount it found plaintiff comparatively negligent, giving plaintiff a total amount of $128,000. The trial court later denied plaintiff's motion for prejudgment interest, as well as BP's motions for a new trial and judgment notwithstanding the verdict.

## I

■ The first assignment of error is the trial court erred by applying principles of equitable estoppel to preclude BP from asserting a defense based upon the statute of limitations. The parties agree that plaintiff did not timely file her complaint—the issue is whether she established the elements of equitable estoppel.

■ "Equitable estoppel precludes a party from asserting certain facts where the party, by his conduct, has induced another to change his position in good faith reliance upon that conduct." *State ex rel. Cities Serv. Oil Co. v. Orteca* (1980), 63 Ohio St.2d 295, 299, 17 O.O.3d 189, 191, 409 N.E.2d 1018, 1020–1021. "The purpose of equitable estoppel is to prevent actual or constructive fraud and to promote the ends of justice." *Ohio State Bd. of Pharmacy v. Frantz* (1990), 51 Ohio St.3d 143, 145, 555 N.E.2d 630, 633.

■ To show a *prima facie* case for application of equitable estoppel, a plaintiff must show that (1) the defendant made a factual misrepresentation, (2) that is misleading, (3) that induces actual reliance that is reasonable and in good faith, and (4) that causes detriment to the relying party. See *Doe v. Blue Cross/Blue Shield of Ohio* (1992), 79 Ohio App.3d 369, 379, 607 N.E.2d 492, 498–499; *First Fed. S. & L. Assn. v. Perry's Landing, Inc.* (1983), 11 Ohio App.3d 135, 145, 11 OBR 215, 226–227, 463 N.E.2d 636, 647–648.

Plaintiff's abduction occurred on March 4, 1992. Pursuant to R.C. 2305.10, she had two years in which to bring this action. She did not file her complaint until March 8, 1994.

During the hearing on the motion for summary judgment, it became apparent that neither party knew the precise date of the incident. Plaintiff testified that she filed a police report in which she identified the date of the incident as March

4, 1992. The BP employee on duty at the service station at the time of the incident likewise gave the police a statement which similarly noted the date of the incident as March 4, 1992. As a result of these statements, the police arrested Holly and the Cuyahoga County Grand Jury indicated him for abduction, also listing the date of the offense as March 4, 1992.

Plaintiff initially retained attorney Charles Longo. On September 4, 1992 and again on October 8, 1992, attorney Longo wrote BP to inform it of plaintiff's claim. Attorney Longo, not knowing the date of the incident, simply listed it as "March, 1992." On November 12, 1992, attorney James Joseph, claiming to represent plaintiff, wrote a demand letter to BP, this time referring to "an incident which occurred on March 9, 1992."

BP replied for the first time by letter dated November 16, 1992 to attorney Longo, informing plaintiff that it would forward the letter to its insurance carrier. BP's letter listed the date of the incident as "3/03/92." BP's claims representative wrote attorney Longo and acknowledged receipt of the claim. The letter (and two subsequent letters from the claims representative) identified the date of the event as "3/19/92."

On February 3, 1993, attorney Joseph wrote the claims representative to inform her that he would be assuming plaintiff's legal representation. This time, attorney Joseph listed the date of the incident as March 19, 1992. From this point forward, the parties' correspondence continued to list the date of the incident as March 19, 1992. Attorney Joseph filed the complaint.

Among the various dates used by the parties in their correspondence, none accurately stated the date of the incident. Attorney Joseph was the first person to give a specific date of the incident when he wrote BP and listed the date of the abduction as March 9, 1992. Attorney Joseph later stated in affidavit and in court, "I do not have any idea why I used that date."

The claims representative testified that her first notice of the date of the abduction came when she received BP's November 16, 1992 letter, which listed the date of the incident as "3/03/92." She acknowledged that she subsequently sent letters to plaintiff's counsel which identified the date of the occurrence as March 19, 1992 but, like attorney Joseph, stated that she had no idea where that date came from and thought it might be a typographical error. She maintained that she had no idea of the correct date of the incident and relied upon plaintiff to supply her with the correct date.

For her own part, plaintiff could not say when the incident occurred. She submitted an affidavit in which she stated, "I do not remember the date the incident occurred. When I consulted with Mr. Longo and Mr. Joseph, I did not know the date the incident occurred and I was unable to tell them." She claimed

to remember nothing that happened between the incident and when she filed her police report.

Given this conflicting testimony by the parties, the application of equitable estoppel hinged almost entirely on the credibility of the witnesses. In a written opinion, the trial court found little to credit in the claims adjuster's testimony. Noting that insurance companies "applied stringent rules to their claimants for compliance with time limitations and deadlines," the court found it "reasonable for the claimant to rely on the date used by the insurance company when reviewing the claim." The court further found that the claims adjuster's testimony, if believed, "flies in the face of what any preliminary and most basic investigation should uncover."

We are mindful that questions involving the credibility of witnesses are matters for the trier of fact because the trier of fact is in the best position to weigh the testimony. *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212. We are aware that the parties presented conflicting evidence, and we are further aware that plaintiff's attorneys may have had alternative means (such as obtaining a copy of the police report) that might have alerted plaintiff to the correct date of the incident. However, the trial court had this same information before it, considered the same arguments, and resolved this conflicting evidence by making a factual determination in plaintiff's favor. Under the circumstances, we find competent, credible evidence to support the trial court's findings. *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 10 OBR 408, 461 N.E.2d 1273.

A situation similar to that presented here occurred in *Bryant v. Doe* (1988), 50 Ohio App.3d 19, 552 N.E.2d 671. In *Bryant,* the court estopped an insurance company from pleading the statute of limitations as a defense when the insurance company, aware of the date of an accident, misrepresented that date to Bryant's attorney, who told the insurance company he was relying on their representation.

Evidence in the record suggests that the claims adjuster did have the correct date of the incident in her file and may not have been truthful when she denied knowledge of the correct date of the incident. Documents obtained for use in the prejudgment interest hearing show that the claims adjuster received reports from BP which listed the correct date of the incident. While not presented to the trial court for purposes of the equitable estoppel issue, they nonetheless bolster the trial court's conclusion that the claims adjuster either knew the correct date of the incident and purposefully withheld that information despite her awareness or failed to undertake even the most minimal investigation in pursuit of the correct date. Given plaintiff's inability to recall the correct date and her attorneys' stated confusion, the trial court did not err by finding BP equitably

estopped from asserting the statute of limitations as a defense to the action. The first assignment of error is overruled.

## II

In its second assignment of error, BP argues that the trial court erred by failing to grant its motion for summary judgment or, in the alternative, its motion for a directed verdict on plaintiff's negligence claim. BP maintains that it had no duty to protect plaintiff from Holly's criminal acts because his behavior was unforeseeable.

■ In order to state an actionable claim for negligence, the plaintiff must demonstrate the existence of a duty, a breach of the duty and damages proximately caused by the breach of the duty. *Jeffers v. Olexo* (1989), 43 Ohio St.3d 140, 142, 539 N.E.2d 614, 616–617.

■ An occupier of premises for business purposes may be subject to liability for harm caused to a business invitee by the conduct of third persons that endangers the safety of the invitee. *Howard v. Rogers* (1969), 19 Ohio St.2d 42, 48 O.O.2d 52, 249 N.E.2d 804, paragraph one of the syllabus. A business owner's duty to warn or protect its business invitees from criminal acts of third parties arises when the business owner knows or should know that there is a substantial risk of harm to its invitees on the premises in possession and control of the owner. *Simpson v. Big Bear Stores Co.* (1995), 73 Ohio St.3d 130, 652 N.E.2d 702, syllabus.

■ The concept of foreseeability of criminal acts has evolved into two distinct concepts. *McKee v. Gilg* (1994), 96 Ohio App.3d 764, 767, 645 N.E.2d 1320, 1322–1323. Some courts focus solely on prior acts occurring on the business premises. See, *e.g., Howard, supra; Hickman v. Warehouse Beer Sys., Inc.* (1993), 86 Ohio App.3d 271, 620 N.E.2d 949. Other courts, including this appellate district, look to the totality of the circumstances to determine whether, absent special circumstances, the landowner conformed to a standard of ordinary care in providing security. See, *e.g., Reitz v. May Co. Dept. Stores* (1990), 66 Ohio App.3d 188, 583 N.E.2d 1071. Under the totality-of-the-circumstances test, we look to the business owner's knowledge of criminal acts, keeping in mind that the circumstances must be "somewhat overwhelming." See *Feichtner v. Cleveland* (1994), 95 Ohio App.3d 388, 396, 642 N.E.2d 657, 662.

BP raised the issue of foreseeability in both a motion for summary judgment and a motion for a directed verdict. The motions present a similar standard of review, the only difference being that BP bore the initial burden of proving the motion for summary judgment while plaintiff bore the burden of presenting evidence at trial. *DeLuca v. BancOhio Natl. Bank, Inc.* (1991), 74 Ohio App.3d

233, 237, 598 N.E.2d 781, 783–784. Inasmuch as both motions involve similar standards of review (whether reasonable minds could come to but one conclusion based upon the evidence), we need not independently analyze the evidence presented on behalf of both motions.

■ The evidence presented both in the motion for summary judgment and at trial conflicted to the extent that the trial court did not err by failing to grant either the motion for summary judgment or the motion for a directed verdict.

Plaintiff presented considerable evidence to show that BP had standing orders for employees to call the police if loiterers refused to leave the premises. The attendant on duty acknowledged her familiarity with Holly, describing him as a "bum" and admitting that he looked like he might be "on something," perhaps alcohol or drugs. She testified that in the month before the incident occurred she asked Holly to leave the premises "a couple dozen times" because he would hang around the service station off and on all day, panhandling. In fact, she testified that she telephoned the police earlier the day of the incident with a request to have him removed from the premises. The police responded and drove Holly away.

Despite her extensive knowledge of Holly and his panhandling, the attendant admitted lying when she told plaintiff that she did not know Holly. When Holly approached plaintiff in the convenience store area of the service station and began badgering her for food, plaintiff asked the attendant if she knew Holly. The attendant said that she did not know who he was, but urged plaintiff to buy him something to eat.

The attendant saw Holly leave the store area of the service station and approach plaintiff's employer's car with the employer's one-year-old son in a child's seat. The attendant ignored plaintiff's plea for her to call the police even though she could see plaintiff's hands shaking as she paid for Holly's food. The attendant further watched Holly get into plaintiff's car and drive away with her, but still did not call the police. She claimed to have immediately called the police with a description of Holly and plaintiff's car, but at trial she equivocated on the time, saying that it might have been as much as an hour before she called the police. This contradiction was largely immaterial since plaintiff presented police records demonstrating that the police received no calls from the attendant relating to plaintiff's abduction.

Under the totality of the circumstances, we find that plaintiff presented sufficient evidence from which reasonable minds could differ on the issue whether BP could have foreseen Holly's criminal conduct. BP's foreknowledge of Holly's panhandling and its refusal to take immediate steps to call the police were facts

which could lead a reasonable trier of fact to conclude that BP breached its duty to plaintiff. The second assignment of error is overruled.

## III

■ The third assignment of error complains that the jury's verdict was not supported by the weight of the evidence. BP maintains that plaintiff's testimony was inherently unbelievable and that her abduction occurred as a result of her own negligence in leaving a child in an unlocked car; therefore, the jury's verdict is an aberration.

BP's arguments are merely attempts to have us rewrite the jury's verdict. They are unavailing. The primary witnesses were plaintiff and the BP attendant. Both witnesses gave testimony that afforded opposing counsel an excellent opportunity to engage in vigorous impeachment. The witnesses each admitted to memory lapses and gave explanations which the jury could reasonably choose to believe or disbelieve. Under the circumstances, we must necessarily defer to the jury's determination because it was in the best position to view the demeanor of the witnesses and assess credibility; consequently, we must make every reasonable presumption in an effort to uphold the verdict. *Fletcher v. Fletcher* (1994), 68 Ohio St.3d 464, 468, 628 N.E.2d 1343, 1347.

We are particularly perplexed by the argument that plaintiff's negligence primarily contributed to her abduction because it points out a logical inconsistency in BP's position. Arguing that plaintiff should have taken steps to secure her vehicle and the child inside that vehicle necessarily implies that she herself had the duty to foresee criminal activity—a duty BP has denied it owed to plaintiff, despite overwhelming evidence that it had superior knowledge of Holly. Admittedly, other persons may have proceeded differently than plaintiff under the circumstances, but the jury considered this precise question and found that plaintiff's comparative negligence contributed to twenty percent of her injuries. We find nothing in the record to convince us that the jury lost its way when making this determination. The third assignment of error is overruled.

## IV

■ BP's fourth assignment of error is that the trial court erred by failing to exclude evidence of Holly's criminal record. BP argues that the criminal record was inadmissible since it detailed Holly's arrest record, not his record of convictions.

Prior to trial, BP filed a motion *in limine* in which it asked the court to exclude any testimony or the introduction of exhibits relating to Holly's arrest and conviction on the abduction charge. The trial judge initially granted the motion

*in limine* and ordered any evidence of Holly's no contest plea excluded from trial. However, the court subsequently permitted a police detective testifying for plaintiff to state over objection that Holly had been arrested for the offense.

We review claimed errors relating to the admission of evidence for an abuse of discretion. *Calderon v. Sharkey* (1982), 70 Ohio St.2d 218, 222, 24 O.O.3d 322, 324–325, 436 N.E.2d 1008, 1011–1012. There is no indication in the record to explain why the judge reversed his initial ruling excluding Holly's arrest for abduction, but under the circumstances we cannot find this reversal an abuse of discretion. The detective made a fleeting reference to the arrest. Other information relating to Holly's criminal proceedings (for example, a reference to the grand jury) was stricken and, in any event, BP did not contest the fact that Holly perpetrated the abduction, so its impact on the jury, if any, would have been minimal. The fourth assignment of error is overruled.

V

In its fifth assignment of error, BP complains that the trial court erred by permitting plaintiff to introduce BP's internal documents which detailed three armed robberies at the service station. BP's motion *in limine* maintained that those documents were irrelevant and, even if relevant to plaintiff's case, had a prejudicial effect that substantially outweighed their probative value.

Evid.R. 403 states:

"(A) Exclusion mandatory. Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, or confusion of the issues, or of misleading the jury.

"(B) Exclusion discretionary. Although relevant, evidence may be excluded if its probative value is substantially outweighed by considerations of undue delay, or needless presentation of cumulative evidence."

In *Reitz, supra,* we addressed the issue of what constitutes relevant evidence for purposes of determining whether a business owes a duty toward its customers for the criminal acts of third parties and decided that the courts should look to the totality of the circumstances. *Id.,* 66 Ohio App.3d at 193, 583 N.E.2d at 1074–1075.

The exhibits in question detailed armed robberies occurring in December 1987, May 1990 and June 1991. These instances were too remote both substantively and temporally from the abduction in this case and should not been admitted into evidence. Nevertheless, those exhibits were not the only evidence to establish BP's foreseeability. The attendant on duty readily admitted that Holly routinely harassed customers, and that she had standing orders to have him removed from the premises and had done so on many occasions. Despite this knowledge, the

attendant failed to remove Holly as he harassed plaintiff and, in fact, exacerbated the situation by telling her to give in to his panhandling. These were the relevant prior acts the jury properly relied upon, and we cannot say that but for the admission of the exhibits detailing the prior armed robberies at the service station, the jury would not have returned a verdict for plaintiff. Hence, while not relevant, the exhibits were not unduly prejudicial in light of the substantial relevant evidence presented. The fifth assignment of error is overruled.

## VI

The sixth assignment of error complains that the trial court erred by permitting Daniel Schubert, a psychologist, to testify as an expert witness because plaintiff did not identify him as such pursuant to the notice provisions of Loc.R. 21.1 of the Cuyahoga County Court of Common Pleas, General Division. BP retained Schubert to independently examine plaintiff. When Schubert concluded plaintiff suffered from post-traumatic stress disorder, BP elected not call him as a witness. Plaintiff then deposed Schubert and decided to call him as her own witness. BP filed its motion *in limine* seeking to exclude Schubert's testimony.

The trial court has broad discretion to exclude expert witnesses who are not properly identified prior to trial. *Nakoff v. Fairview Gen. Hosp.* (1996), 75 Ohio St.3d 254, 662 N.E.2d 1, syllabus; *Paugh & Farmer, Inc. v. Menorah Home for Jewish Aged* (1984), 15 Ohio St.3d 44, 15 OBR 142, 472 N.E.2d 704. The purpose behind the witness disclosure rules is to "prevent surprise to either party at the trial or to avoid hampering either party in preparing its claims or defense for trial." *Jones v. Murphy* (1984), 12 Ohio St.3d 84, 12 OBR 73, 465 N.E.2d 444. However, in exercising its discretion, the trial court should adhere to the principle that Ohio policy favors the fullest opportunity to complete discovery. *Stegawski v. Cleveland Anesthesia Group, Inc.* (1987), 37 Ohio App.3d 78, 85, 523 N.E.2d 902, 909–910.

At the outset, we reject BP's argument that Loc.R. 21.1 requires mandatory exclusion of Schubert's testimony under the circumstances. We have never made such a narrow reading of the rule. In point of fact, we have consistently held that the trial court retains discretion to apply Loc.R. 21.1. See, e.g., *Downs v. Quallich* (1993), 90 Ohio App.3d 799, 803, 630 N.E.2d 775, 777–778; *Mina v. Southwest Gen. Hosp.* (Aug. 17, 1995), Cuyahoga App. No. 67766, unreported, 1995 WL 491126; cf. *Pang v. Minch* (1990), 53 Ohio St.3d 186, 559 N.E.2d 1313, paragraph one of the syllabus (construing former Loc.R. 21 as vesting the trial court with discretion to determine compliance therewith).

We find that the trial court did not abuse its discretion by permitting Schubert to testify on plaintiff's behalf because BP makes no showing that it was surprised by Schubert's testimony. Indeed, BP rejected Schubert as an expert witness because he independently confirmed the diagnosis made by plaintiff's clinical social worker. Moreover, BP attended plaintiff's deposition of Schubert and heard his response to questions concerning plaintiff's posttraumatic stress. Consequently, BP cannot readily argue that it had no idea what Schubert would say on the witness stand. While it may have been late in the day for plaintiff to call Schubert, we cannot say that the trial court abused its discretion in denying BP's motion *in limine.*

Finally, we note that Schubert gave virtually the same testimony as that given by plaintiff's clinical social worker. It provided cumulative evidence, particularly as to plaintiff's objective symptoms of posttraumatic stress disorder and did not prejudice BP's case. *Mina, supra.* The sixth assignment of error is overruled.

## VII

In her assignment of error in support of her cross-appeal,[2] plaintiff complains that the trial court erred by denying her motion for prejudgment interest.

R.C. 1343.03(C) provides:

"Interest on a judgment, decree, or order for the payment of money rendered in a civil action based on tortious conduct and not settled by agreement of the parties, shall be computed from the date the cause of action accrued to the date on which the money is paid, if, upon motion of any party to the action, the court determines at a hearing held subsequent to the verdict or decision in the action that the party required to pay the money failed to make a good faith effort to settle the case and that the party to whom the money is to be paid did not fail to make a good faith effort to settle the case."

The General Assembly enacted R.C. 1343.03 to promote settlement efforts, to prevent parties who have engaged in tortious conduct from frivolously delaying the ultimate resolution of cases, and to encourage good faith efforts to settle controversies outside a trial. *Kalain v. Smith* (1986), 25 Ohio St.3d 157, 159, 25 OBR 201, 202–203, 495 N.E.2d 572, 573–574. A party has not failed to make a good faith effort to settle under R.C. 1343.03(C) if it has (1) fully cooperated in discovery proceedings, (2) rationally evaluated its risks and poten-

---

**2.** Plaintiff filed a cross-assignment relating to the exclusion of statements made by Holly and the court's refusal to give proposed jury instructions, but withdrew those in the event this court affirmed the verdict.

tial liability, (3) not attempted to unnecessarily delay any of the proceedings, and (4) made a good faith monetary settlement offer or responded in good faith to an offer from the other party. *Id.* at syllabus; *Villella v. Waikem Motors, Inc.* (1989), 45 Ohio St.3d 36, 42, 543 N.E.2d 464, 470–471. We review prejudgment interest determinations for an abuse of discretion. *Huffman v. Hair Surgeon, Inc.* (1985), 19 Ohio St.3d 83, 87, 19 OBR 123, 126–127, 482 N.E.2d 1248, 1251–1252.

Plaintiff maintains that BP did rationally evaluate its risks and potential liability, nor did it make a good faith settlement offer or respond in good faith to plaintiff's settlement offers. We disagree.

### A

"If a party has a good faith, objectively reasonable belief that he has no liability, he need not make a monetary settlement offer." *Kalain, supra,* 25 Ohio St.3d at 159, 25 OBR at 203, 495 N.E.2d at 574; *Fischer v. Dairy Mart Convenience Stores, Inc.* (1991), 77 Ohio App.3d 543, 560, 602 N.E.2d 1204, 1215.

BP resisted settlement in large part due to its belief that it had several excellent defenses, including comparative negligence. The trial judge acknowledged the vitality of those defenses, particularly finding the comparative negligence defense a "valid reason for questioning liability in the case." Although we have affirmed the trial court's factual findings on BP's asserted defenses, we cannot say that the defense itself was completely lacking in good faith or reasonableness.

Plaintiff's brief in support of its motion for prejudgment interest simply relied on her belief that the jury verdict "was inevitable." This statement falls far short of meeting plaintiff's burden to show BP rationally failed to evaluate its risks and potential liabilities because an adverse jury verdict standing alone is not proof of irrational evaluation. *Black v. Bell* (1984), 20 Ohio App.3d 84, 88, 20 OBR 105, 108–109, 484 N.E.2d 739, 742–743; *Holman v. Grandview Hosp. & Med. Ctr.* (1987), 37 Ohio App.3d 151, 159, 524 N.E.2d 903, 911–912. Based on the evidence heard during the hearing, we find that the trial court did not abuse its discretion by finding BP rationally evaluated its potential liability.

### B

Similarly, we find that the trial court did not abuse its discretion by finding that BP did not fail to make a good faith effort to settle. Plaintiff listed total out-of-pocket medical expenses of $640. In discussions held prior to filing her complaint, she offered in writing to settle the matter for $25,000. BP countered with $5,000. After filing her complaint and retaining new counsel, plaintiff's

demand increased to $250,000 and did not change in any communication made directly to BP, although she did offer to settle the matter for $50,000 on the day of trial (BP countered with the cost of its defense). The trial judge found the initial offer of $5,000 reasonable in light of BP's opinion that it had no liability or "at least questionable liability." On this record, we cannot say that the trial judge abused his discretion. The cross-assignment of error is overruled.

*Judgment affirmed.*

DYKE, P.J., and O'DONNELL, J., concur.