AGA GAS INCORPORATED, Plaintiff,

v.

MANUFACTURERS AND TRADERS TRUST COMPANY, et al., Defendant–Counterclaimants,

v.

**Monica Zeman, Counterclaim Defendant.**

No. 1:99–CV–3043.

United States District Court, N.D. Ohio, Eastern Division.

May 19, 2000.

Edward Kancler, Benesch, Friedlander, Coplan & Aronoff, Robert C Psaropoulos, Benesch, Friedlander, Coplan & Arnold, Cleveland, OH, for AGA Gas, Inc., an Ohio Corporation, Plaintiff.

Howard JC Nicols, Steven A Delchin, Thomas S Kilbane, Squire, Sanders & Dempsey, Cleveland, OH, for Manufacturers & Traders Trust Company, Defendant.

David H Wallace, Kelley, McCann & Livingstone, Cleveland, OH, for Chase Manhattan Trust, Defendant.

## OPINION

GWIN, District Judge.

On April 20, 2000, Plaintiff AGA Gas, Incorporated ("AGA Gas") filed a motion for summary judgment on its claims against Defendant–Counterclaimants Manufacturers and Traders Trust Company ("M & T Trust") and Chase Manhattan Trust Company ("Chase Manhattan Trust") [Doc. 34]. AGA Gas also seeks summary judgment on the counterclaims brought against it by M & T Trust and Chase Manhattan Trust.[1]

On that same date, M & T Trust filed a motion for summary judgment on its claims against AGA Gas and Monica Zeman, AGA Gas's treasurer [Doc. 36]. Further, M & T Trust seeks summary judgment on the claims brought against it by AGA Gas.

For the reasons set forth below, the Court grants in part and denies in part the parties' motions for summary judgment.

1. Monica Zeman also moves for summary judgment on M & T Trust's misrepresentation claim.

### I.

This action arises from a lease agreement ("Lease") relating to an air separation facility. The facility is located in Canton, Ohio. Plaintiff AGA Gas is the lessee under the Lease. The Lease designates The Philadelphia National Bank ("TPNB") or its successor as the lessor. TPNB leased the facility to AGA Gas under a trust agreement with Defendant–Counterclaimant M & T Trust. TPNB owned the facility as trustee, with M & T Trust retaining beneficial ownership over the trust estate. Defendant Counterclaimant Chase Manhattan Trust is the successor of TPNB.

The Lease provides AGA Gas with a fifteen-year lease of the facility. Executed in 1985, the Lease expires on December 10, 2000. Upon the expiration of the Lease, AGA Gas has the option to either purchase the facility or rent the facility for an additional term. These end-of-lease options lie at the center of the parties' present dispute.

Under the Lease, AGA Gas is required to notify the lessor if it chooses to exercise either the purchase or renewal option no later than one year before the expiration of the Lease, i.e., December 10, 1999. If AGA Gas elects to purchase the facility, the agreement provides that AGA Gas must pay an amount equal to the facility's "Fair Market Sales Value." [2]

Under this provision, the parties may simply agree on what constitutes the facility's Fair Market Sales Value. However, if the parties are unable to agree, the Lease provides that either party may request that the purchase price be determined through the "Appraisal Procedure." [3]

---

**2.** Section 15 of the Lease describes the option given Plaintiff AGA Gas to purchase the facility:

> SECTION 15. RETURN OF FACILITY; DISMANTLING; PURCHASE OPTION; STORAGE AND MAINTENANCE; PLANS AND SPECIFICATIONS.
>
>   \*   \*   \*   \*   \*   \*
>
> (c) Purchase Option. Provided that this Lease has not been terminated and that no Default or Event of Default shall have occurred and be continuing hereunder, Lessee shall have the right, at its option, upon not less than 12 months written notice to Lessor prior to the end of the Term, to purchase the Facility on the last day of the Term for a cash purchase price equal to the Fair Market Sale Value of the Facility determined as of the date of purchase. In the event that Lessee elects to purchase the Facility in accordance with this Section 15(c), on the last day of the Term Lessee shall pay to Lessor the purchase price specified in the preceding sentence, together with an amount equal to all costs and expenses (including legal fees and expenses) incurred or paid by Lessor and the Owner Participant in connection with such sale. Upon receipt of such amounts, Lessor shall transfer title to the Facility to Lessee on an "as-is, where-is" basis, without any representation or warranty, express or implied, by Lessor (except as to the absence of Lessor's Liens) and without recourse to Lessor.

**3.** Section 1 of the Lease describes the appraisal procedure:

> 'Appraisal Procedure' shall mean the following procedure for determining Fair market Rental Value or Fair Market Sale Value if either Lessor or Lessee shall request by notice (the "Appraisal Request") to the other the determination of either of such Values by the Appraisal Procedure. Lessor and Lessee shall, within 15 days after the Appraisal Request, appoint an independent appraiser mutually satisfactory to them, who shall determine such Value. If Lessor and Lessee are unable to agree on a mutually acceptable appraiser within such 15-day period, Fair Market Rental Value or Fair Market Sale Value, as the case may be, shall be determined by a panel of three independent appraisers, one of which shall be appointed by Lessor, another by Lessee and the third of whom shall be appointed by the other two appraisers or, if such two appraisers are unable to agree on a third appraiser within 45 days after the Appraisal Request, by the American Arbitration Association (or its successor); provided that if Lessor or Lessee shall not have appointed its appraiser within 30 days after the Appraisal Request, such Value shall be determined solely by the appraiser selected by the other party. The appraiser or appraisers appointed pursuant to the foregoing procedure shall be instructed to determine Fair Market Rental Value or Fair Market Sale Value, as the case may be, within 45 days after such appointment and such determination shall be final and binding on Lessor and Lessee. If three apprais-

The Appraisal Procedure begins when one party sends the other party an "Appraisal Request." After a party makes an Appraisal Request, both parties attempt to agree on a mutually acceptable appraiser to determine the Fair Market Sales Value. If the parties cannot find a mutually acceptable appraiser, each will appoint its own appraiser. These two appraisers will select a third appraiser. The three appraisers then each separately appraise the facility. Under the Lease, the two appraisals most near each other are averaged while the appraisal that diverges most significantly from the other two appraisals is excluded. This average of the two appraisals most near each other is the Fair Market Sales Value.

This Appraisal Procedure requires the parties to respond in a timely manner. If one of the parties fails to appoint its independent appraiser within thirty days of the Appraisal Request, the other party's appraisal unilaterally determines the Fair Market Sales Value.

Here, Plaintiff AGA Gas says it elected to purchase the facility prior to the December 10, 1999, deadline. Further, AGA Gas says it initiated the Appraisal Procedure by sending M & T Trust an Appraisal Request along with the appraisal of its independent appraiser. Because M & T Trust did not timely respond by appointing its own appraiser, AGA Gas says M & T Trust is bound to sell the facility for the Fair Market Sales Value set by AGA Gas's appraiser.

Defendant M & T Trust says AGA Gas has not effectively elected to purchase the facility. According to M & T Trust, the election notification sent by AGA Gas was both conditional and sent to the wrong party. Moreover, M & T Trust says AGA Gas is in default and has thus lost the right to purchase the facility.

Further, M & T Trust says AGA Gas has not properly initiated the Appraisal Procedure. M & T Trust contends that the letter AGA Gas says constituted an Appraisal Request was too ambiguous. Also, M & T Trust says Monica Zeman, AGA Gas's treasurer, represented that the letter was not an Appraisal Request.

With its motion for summary judgment, AGA Gas seeks judgment on its claims against M & T Trust and Chase Manhattan Trust. These claims include (1) a claim for a judgment declaring that M & T Trust, rather than Chase Manhattan Trust, is the real party in interest in this action; (2) a claim for a judgment declaring AGA Gas's right to purchase the facility for the amount set by its appraiser; (3) a claim for specific performance ordering M & T Trust to consummate the sale of the facility to AGA Gas; and (4) a claim against M & T Trust for breach of the duty of good and fair dealing. AGA Gas further seeks summary judgment on M & T Trust and Chase Manhattan Trust's counterclaims.

In its motion for summary judgment, M & T Trust seeks summary judgment on its claims against AGA Gas and Monica Zeman. These claims include (1) a claim for a judgment declaring that M & T Trust is not required to sell the facility to AGA Gas, and even if it is so required, that the purchase price remains undetermined; (2) a claim for indemnity against AGA Gas; (3) a claim for breach of the duty of good faith and fair dealing against AGA Gas; and (4) a claim for negligent or intentional

ers are appointed, the determination of the appraiser that shall differ most from the determinations of the other two appraisers shall be excluded, the remaining two determinations shall be averaged and such average shall constitute the determination of the appraisers. The fees and expenses of the appraiser appointed by Lessee shall be paid by Lessee, the fees and expenses of the appraiser appointed by the Lessor shall be paid by the Lessor and the fees and expenses of the third appraiser shall be divided equally between Lessee and Lessor, except that all fees and expenses of all the appraisers shall be paid by Lessee in the case of an appraisal or determination under Section 18 hereof.

misrepresentation against AGA Gas and Monica Zeman.

## II.

A court may grant summary judgment only if the materials properly before the court "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party has the burden of showing conclusively that no genuine issue of material fact exists. *See 60 Ivy Street Corp. v. Alexander,* 822 F.2d 1432, 1435 (6th Cir. 1987). In deciding whether the moving party has met this burden, a court must view the facts and all inferences drawn therefrom in the light most favorable to the nonmoving party. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

A factual dispute stops summary judgment only if it is material, that is, if it relates to a matter essential to adjudication. The dispute must concern facts that, under the substantive law governing the issue, might affect the outcome of the suit. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The factual dispute must also be genuine. The facts must be such that, if they were proven at trial, a reasonable jury could return a verdict for the nonmoving party. *See id.* at 248, 106 S.Ct. 2505. The disputed issue does not have to be resolved conclusively in favor of the nonmoving party, but that party is required to present significant probative evidence that makes it necessary to resolve the parties' differing versions of the dispute at trial. *See 60 Ivy Street,* 822 F.2d at 1435 (citing *First Nat'l Bank of Arizona v. Cities Serv. Co.,* 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Thus, the judge's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue a proper jury question. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *60 Ivy Street,* 822 F.2d at 1436 (quoting *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505). Accordingly, viewing the evidence in the light most favorable to the nonmoving party, the court should determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251, 106 S.Ct. 2505.

## III.

### A.

The parties' primary dispute concerns their rights and obligations with regard to the end-of-lease options set forth in the Lease. Plaintiff AGA Gas says it is entitled to purchase the facility at the end of the Lease for the value its appraiser set for the facility. In contrast, Defendant M & T Trust insists that AGA Gas does not have the right to purchase the facility for any amount, let alone the amount set by AGA Gas's appraiser.

For the reasons set forth below, the Court finds that genuine issues of material fact exists as to whether AGA Gas has validly exercised its option to purchase the facility and, if so, the proper purchase price of the facility.

On December 10, 1999, AGA Gas informed M & T Trust in a letter that it is exercising its right to purchase the facility at the end of the Lease. Specifically, the last sentence of the letter stated that "under the provisions of Section 15(c) of the Lease, we hereby exercise our option to purchase the Premises for Twelve Million Dollars ($12,000,000)." Both timely and

unequivocal, this notice of election is effective under the Lease.

Arguing otherwise, M & T Trust suggests that AGA Gas failed to exercise its right to purchase the facility because it only elected to purchase the facility for $12 million—the fair market value of the facility set by its appraiser. According to M & T Trust, the Lease requires AGA Gas to purchase the facility for the Fair Market Sales Value, not a price unilaterally chosen by AGA Gas.

However, M & T Trust ignores the full context of the December 10, 1999, letter. AGA Gas explained in the letter that the $12 million amount constituted what it considered the Fair Market Sales Value under the Lease. In particular, AGA Gas stated that M & T Trust had failed to appoint its appraiser within thirty days of receiving an Appraisal Request from AGA Gas. AGA Gas then stated that M & T Trust's failure to appoint its appraiser meant that AGA Gas's appraiser would determine the Fair Market Sales Value of the facility.

Thus, by electing to purchase the facility for $12 million, AGA Gas was in fact electing to purchase the facility for the Fair Market Sales Value. Although M & T Trust did not agree with AGA Gas's determination of that amount, this disagreement does not render AGA Gas's election ineffective.[4]

■ M & T Trust and Chase Manhattan Trust next argue that even if it contained a proper election, the December 10, 1999, letter was sent to the wrong party. The Lease states that AGA Gas must notify the lessor if it intends to elect an end-of-lease option. The agreement designates TPNB or its successor as the lessor. Chase Manhattan Trust is the successor of TPNB. Thus, the M & T Trust and Chase Manhattan Trust say AGA Gas could effectively elect an option only by notifying Chase Manhattan Trust.

This argument does not persuade. Although the Lease does not identify M & T Trust as the lessor, M & T Trust has essentially served in the role of the lessor from the inception of the agreement.

Specifically, M & T Trust, the actual owner of the facility and the lessor of the facility for tax purposes, has consistently held itself out as the lessor in its correspondence with AGA concerning the end-of-lease options. In a December 2, 1999, letter to AGA Gas, M & T Trust explicitly assumed the role of lessor by stating that "the Lease currently requires AGA Gas *to notify M & T Bank* of its intent to exercise any of the purchase or renewal options by December 10, 1999." M & T Trust cannot disavow in this litigation the role it has played with regard to the Lease of this facility throughout the lease-end negotiations.

■ Finally, M & T Trust says AGA Gas had defaulted under the Lease prior to its attempted end-of-lease election on December 10, 1999. Because the Lease conditions AGA Gas's right to exercise its end-of-lease options on the absence of default, M & T Trust says AGA Gas could not have effectively elected to purchase the facility.

Section 17 of the Lease sets forth the "Events of Default." This provision states that a default arises from any failure to perform an obligation created by either the Lease or the Participation Agreement entered into by M & T Trust and AGA Gas as part of the original lease transaction.

M & T Trust first argues that AGA Gas defaulted when it amended its Pipeline Service Agreement with The Timken Company ("Timken"). The Pipeline Service Agreement provides that Timken will se-

---

4. Even if AGA Gas elected to purchase the facility for a price different from the Fair Market Sales Value, the election to purchase the facility would remain effective. *See* RESTATEMENT (SECOND) OF CONTRACTS § 61 (1979) ("An acceptance which requests a change or addition to the terms of the offer is not thereby invalidated unless the acceptance is made to depend on an assent to the changed or added terms.").

cure its oxygen, nitrogen, and argon gas requirements from AGA Gas. Section 6.17 of the Participation Agreement prohibits AGA Gas from amending this Pipeline Service Agreement without first receiving written consent from M & T Trust.[5]

In 1995, AGA Gas deleted the automatic five year renewal provision from the Pipeline Service Agreement. AGA Gas then negotiated a new pipeline service agreement to begin after the termination of the current agreement. At no point did AGA Gas receive consent from or otherwise notify M & T Trust of these actions

M & T Trust says AGA Gas violated the Participation Agreement by deleting the automatic renewal provision without receiving prior consent. Because of this default, M & T Trust insists that AGA Gas's purchase election is invalid.

This argument is unavailing. While it prohibits amendments to the Pipeline Service Agreement without prior consent, the Participation Agreement contains exceptions to this consent requirement. Most notably, the Participation Agreement does not require AGA Gas to receive M & T Trust's consent to terminate the Pipeline Service Agreement after its initial term. By deleting the automatic renewal provision, AGA Gas did nothing more than limit the Pipeline Service Agreement to its initial term. Thus, AGA Gas did not default by failing to receive M & T Trust's consent before deleting the renewal provision.

■ M & T Trust next says AGA Gas is in default because it refused to allow a prospective purchaser to visit and inspect the facility. Under Section 5 of the Lease, a prospective purchaser is entitled to "visit and inspect the Facility and Lessee's oper-

ation and maintenance records with respect thereto."

However, M & T Trust sought access for this prospective purchaser on March 14, 2000—several months after AGA Gas elected to purchase the facility. Although Section 5 does not explicitly state that M & T Trust's right to show the facility to a prospective purchaser terminates upon AGA Gas's election to purchase the facility, absurdity would result from any other interpretation of that provision. The Court will not construe the Lease to force AGA Gas to cooperate with the unauthorized sale of the facility.[6] *Cf. Matter of Wallace v. 600 Parnters Co.*, 618 N.Y.S.2d 298, 303, 205 A.D.2d 202 (1994) (explaining that courts may add terms to a contract to avoid an absurd result).

■ M & T Trust also says AGA Gas defaulted by refusing to allow M & T Trust to inspect and copy AGA Gas's books and records with regard to the facility. Section 5 of the Lease gives M & T Trust the right to inspect these records.

M & T Trust offers evidence showing that AGA Gas failed to provide M & T Trust with access to the facility's books and records. Specifically, Jeff Mastroleo, a commercial equipment leasing manager with M & T Trust, testifies that he requested records from AGA Gas in late 1999. Although he says a representative of AGA Gas informed him that operating and financial records specific to the facility did exist, Mastroleo testifies that AGA Gas never made those records available.

AGA Gas offers evidence rebutting M & T Trust's claim of default. AGA Gas offers the testimony of Paul Herrgesell, the

---

**5.** Section 6.17 of the Participation Agreement provides:

6.17 No Amendments. The Lessee shall not amend, supplement, or otherwise modify, or permit the amendment, supplementation or other modification of, or grant any waivers or consents with respect to, or permit the termination of, the Ground Lease, the Subordination Agreement or the Pipeline Service Agreement (except termination of the Pipeline

Service Agreement at or after the expiration of the 15–year initial term thereof) without the prior written consent of the Participants. . . .

**6.** Section 28(e) of the Lease provides that New York law governs any dispute with regard to the meaning or performance of the Lease.

representative Mastroleo says informed him that AGA Gas maintains financial records specific to the facility. Herrgesell says such records do not exist, and denies having told Mastroleo anything to the contrary. Herrgesell states that AGA Gas does maintain operations reports specific to the facility, but that these reports do not analyze the financial operations of the facility. AGA Gas says it provided M & T Trust with these operations reports in January 2000.

Thus, a genuine issue of material fact exists with regard to the issue of default. Because the issue of default remains unresolved, the Court cannot determine whether AGA Gas effectively elected to purchase the facility.

■ Similarly, assuming the validity of AGA Gas's purchase election, a genuine issue of material fact exists as to the proper purchase price of the facility. In particular, the jury must decide whether AGA Gas properly initiated the Appraisal Procedure such that its appraiser's appraisal controls the facility's purchase price.

The Lease states that both parties must appoint their independent appraiser within thirty days of the Appraisal Request. If one party fails to do so, the appraisal of the other party's independent appraiser will set the Fair Market Sales Value.

Here, AGA Gas insists that it initiated the Appraisal Procedure in a letter to M & T Trust dated October 14, 1999. That letter provides in pertinent part:

> Section 1(a) and 13 of our Lease Agreement with you requires that we provide you with an appraisal in accordance with various procedures outlined in the Lease Agreement prior to either purchasing the equipment pursuant to our purchase agreement or extending the Lease pursuant to either our fixed price renew option or our fair market value renewal option.
>
> We hereby request that you accept the attached American Appraisal appraisal as meeting the requirements for such appraisals set forth in the Lease.

Because M & T Trust did not appoint its independent appraiser within thirty days of receiving this letter,[7] AGA Gas says American Appraisal's $12 million valuation of the facility is the Fair Market Sales Value under the Lease.

However, M & T Trust says the October 14, 1999, letter did not effectively trigger the Appraisal Procedure. M & T Trust argues that the letter is too ambiguous to constitute an Appraisal Request.

The October 14, 1999, letter does not expressly initiate the Appraisal Procedure. Indeed, the phrase "Appraisal Procedure" does not appear in the letter. However, the Lease does not require that an Appraisal Request contain any particular terminology. The language of the letter at least creates a genuine issue as to whether the letter constituted an Appraisal Request.

The letter states that AGA Gas is providing an appraisal to M & T Trust as required under Section 1(a) of the Lease. AGA Gas then requests in the letter that M & T Trust "accept" the appraiser "as meeting the requirements for such appraisals set forth in the Lease."

7. Indeed, M & T Trust delayed offering a firm response to AGA Gas's October 14, 1999, letter. In a letter dated November 4, 1999, M & T Trust states that:

> M & T Bank, as Owner Participant, did not agree to the selection of American Appraisal Associates, Inc. for purposes of establishing either the facility's fair market sale or rental value as of December 10, 2000 or the maximum fixed rental renewal term. Nevertheless, we will review your appraisal with an expert of our choosing to determine whether we wish to accept American Appraisal Associates, Inc. valuation.

In a letter dated December 2, 1999, M & T Trust again delays any final response to AGA Gas's October 14, 1999, letter:

> We continue to review the American Appraisal Associates, Inc. valuation analysis of the ASU plant leased by AGA Gas, Inc. under the above-referenced Lease; and are in the process of preparing a formal response.

Section 1(a) of the Lease describes, *inter alia*, the Appraisal Procedure. And the first stage in the Appraisal Procedure calls for the parties to agree on a mutually acceptable appraiser. A reasonable jury could thus interpret the letter as triggering the Appraisal Procedure.

M & T Trust next argues that even if the letter could be construed as invoking the Appraisal Procedure, AGA Gas is estopped from claiming that the letter constituted an Appraisal Request.[8] M & T Trust says Monica Zeman, AGA Gas's treasurer and the letter's author, informed M & T Trust officials that the October 14, 1999, letter was not intended to invoke the Appraisal Procedure. Jeff Mastroleo testifies that he had the following discussion with Zeman after receiving the letter:

'Monica, you're not trying to invoke the formal appraisal procedure,' and Monica said, 'Absolutely not. If I were going to do that, this is going to take more time. I just want you to take these numbers and let me know if these numbers in this appraisal report are okay so I can get this approved at' her board meeting.

M & T Trust says AGA Gas has not rebutted Mastroleo's testimony. M & T Trust apparently argues that because Zeman has not explicitly disavowed making the statements Mastroleo attributes to her, AGA Gas is conceding the veracity of Mastroleo's account.

This is not the case. Zeman testified she had several conversations with Mastroleo prior to sending the October 14, 1999, letter in which she expressed her intent to invoke the Appraisal Procedure:

Once again, I don't recall using the words "Appraisal Request," but I had preconversations before I sent the letter advising what I was doing, that I was starting the process, the end of term process and I was sending a request for an appraiser … and I was also sending along an appraisal, and if that would facilitate the process, we would be weeks ahead.

\* \* \* \* \* \*

I had several conversations saying, when will you name your appraiser? If you're not going to agree with the appraisal that I've given you, when are you going to name your appraiser? I asked several times, who was your appraiser and when will that get started.

And when asked whether her October 14, 1999, letter was ambiguous with regard to its initiation of the Appraisal Procedure, Zeman responded:

If I hadn't had conversations both before and after. But I had specific conversations with Mr. Mastroleo and told him exactly what I was doing.

Additionally, Zeman insists in her deposition testimony that the letter was intended to trigger the Appraisal Procedure:

Q Isn't it fair to say, given the time constraints, that your real purpose in sending out the appraisal was to try and negotiate the price rather than invoke the appraisal procedure?

A I wanted the appraisal procedure to start, and if he was willing to accept my appraisal and negotiate from that, then that would have been a benefit. I even, you know, I mentioned that, I,

**8.** In addition, M & T Trust says that the October 14, 1999, letter could not have initiated the Appraisal Procedure because AGA Gas was required to elect an end-of-lease option before making an Appraisal Request. The Court finds nothing in the Lease that would require AGA Gas to commit to purchasing the facility before discovering the purchase price through the Appraisal Procedure.

Further, M & T Trust says that AGA Gas had to send its Appraisal Request to Chase

Manhattan Trust, the lessor, rather than M & T Trust. Because AGA Gas did not send the October 14, 1999, letter to Chase Manhattan Trust, M & T Trust contends that the letter could not constitute an Appraisal Request. The Court rejects this argument for the same reasons discussed with regard to M & T Trust's claim that AGA Gas had to notify Chase Manhattan Trust of its purchase election.

you know, but if we would have to go the appraisal route, then we would have gone the appraisal route.

Q Yeah, if you weren't able to negotiate, then you would have gone the appraisal route, correct?

A But that's what I did with my October 14th letter.

A material fact issue thus exists as to the exact nature of the parties' communications regarding the purpose of the October 14, 1999, letter. As a result, the jury will ultimately determine whether Zeman represented that AGA Gas did not wish to invoke the Appraisal Procedure such that AGA Gas cannot now claim otherwise.

Genuine factual disputes remain with regard to both AGA Gas's exercise of its purchase option and the purchase price of the facility. The Court thus denies both parties' motions for summary judgment to the extent they seek a declaration regarding M & T Trust's obligation to sell the facility to AGA Gas and, assuming that obligation exists, at what price M & T Trust must sell the facility.[9]

### · B.

Plaintiff AGA Gas and Defendant–Counterclaimant M & T Trust both seek summary judgment on their breach of the duty of good faith and fair dealing claims against the other. The Court finds that neither party has offered material evidence to support its claim.

The implied covenant to act in good faith during the performance of a contract is a well established as a principle of contract law. To act in good faith requires "that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract...." *Just–Irv Sales v. Air–Tite Business Center,* 237 A.D.2d 793, 655 N.Y.S.2d 131, 132 (N.Y.A.D.1997); *Dalton v. Educational Testing Service of*

*Princeton, New Jersey,* 155 Misc.2d 214, 588 N.Y.S.2d 741, 746 (N.Y.Sup.Ct.1992) (noting that contracting parties must not act "in a manner that, although not expressly forbidden by any contractual provision, would deprive the other party of the right to receive the benefits under their agreement").

Here, the evidence does not suggest that either party has surreptitiously sought to deprive the other of the benefit of its bargain under the Lease. Instead, the evidence shows that two sophisticated business entities have disagreed on the meaning of a somewhat complex commercial equipment lease agreement. The parties have acted consistent with their interpretations of the Lease; such conduct is not tantamount to bad faith.

Accordingly, the Court grants M & T Trust and AGA Gas summary judgment on the other's claim for breach of the duty of good faith and fair dealing.

### C.

█ Plaintiff AGA Gas seeks summary judgment on Defendant-Counterclaimants M & T Trust and Chase Manhattan Trust's claims for indemnity. M & T Trust also seeks summary judgment on its indemnity claim. The Court finds that neither party is entitled to judgment.

In Section 7.01 of the Participation Agreement, AGA Gas agreed to:

assume liability for, and ... to indemnify, protect, save and hold harmless and keep whole ... each Indemnified Person [including M & T Trust and Chase Manhattan Bank] from and against any and all liabilities ..., obligations, losses, damages, penalties, claims, actions, suits, judgments, costs, expenses and disbursements ... that may be imposed on, incurred by or asserted against any Indemnified Person, and in any way relating to or arising out of (i) the Facility,

---

**9.** However, in light of the role M & T Trust has played with regard to the Lease, the Court grants AGA Gas's motion seeking judgment

on its claim that M & T Trust is the real party in interest in this litigation.

the Site, the Property Rights or any part of any thereof, the Overall Transaction, or the Basic Agreements [including the Lease].

This language suggests that AGA Gas must indemnify both M & T Trust and Chase Manhattan Trust for the costs and expenses associated with this action. However, Section 7.01 goes on to place important limits on the scope of AGA Gas's indemnity obligation. Specifically, AGA Gas is not obligated to indemnify either M & T Trust or Chase Manhattan Trust if either party has breached the Lease:

the Lessee shall not be required pursuant to this Section to indemnify: (A) any Indemnified Person for loss or liability resulting solely from such Indemnified Person's own gross negligence or willful misconduct ... or breach of any of its representations or warranties or covenants contained in any Basic Agreement. . . .

AGA Gas insists that M & T Trust has breached the Lease by failing to acknowledge its obligation to sell the facility to AGA Gas for $12 million. AGA Gas says Chase Manhattan Trust also breached the Lease. Thus, AGA Gas says it is entitled to summary judgment on both M & T Trust and Chase Manhattan Trust's indemnity claims.

However, as explained above, a material issue of fact remains as to whether M & T Trust breached the Lease. Neither AGA Gas nor M & T Trust is therefore entitled to summary judgment on M & T Trust's indemnity claim.

Likewise, AGA Gas has not shown that the undisputed facts establish that Chase Manhattan Trust has breached the Lease. Indeed, AGA Gas fails to specify in exactly what manner it believes Chase Manhattan Trust breached the Lease. Accordingly, AGA Gas is not entitled to summary judgment on Chase Manhattan Trust's indemnity claim.[10]

### D.

Finally, Defendant–Counterclaimant M & T Trust, Plaintiff AGA Gas, and Counterclaim–Defendant Monica Zeman seek summary judgment on M & T Trust's misrepresentation claim. Because M & T Trust fails to offer evidence establishing an element essential of its claim, the Court grants summary judgment to AGA Gas and Zeman.

To establish a fraudulent misrepresentation claim, M & T Trust must prove each of the following elements: (1) a false representation; (2) made with knowledge of its falsity; (3) with the intent to induce the injured party to rely on the representation; (4) justifiable reliance by the injured party; and (5) injury as a result of that reliance. *See Johnson's Janitorial Serv. v. Alltel Corp.*, 92 Ohio App.3d 327, 329, 635 N.E.2d 60 (1993). Here, M & T Trust is unable to show the fifth element of a fraudulent misrepresentation claim—an injury.[11]

M & T Trust says Monica Zeman, AGA Gas's treasurer, fraudulently misrepresented AGA Gas's intention to make an Appraisal Request with her October 14, 1999, letter. Because Zeman allegedly told M & T Trust that AGA Gas did not wish to initiate the Appraisal Procedure, M & T Trust says it did not appoint an independent appraiser as required under the Ap-

---

**10.** Because Chase Manhattan Trust has not moved for summary judgment, the Court does not consider whether Chase Manhattan Trust is entitled to summary judgment on its indemnity claim.

**11.** Although it characterizes Zeman's misrepresentation as fraudulent in its briefs, M & T Trust has asserted counterclaims for both negligent and intentional misrepresentation. Like a claim for fraudulent misrepresentation, a claim for negligent misrepresentation also requires a showing of injury resulting from reliance on the misrepresentation. *See Westfield Ins. Co. v. HULS America, Inc.*, 128 Ohio App.3d 270, 296, 714 N.E.2d 934, 951 (Ohio App.1998). Thus, the discussion of M & T Trust's fraudulent misrepresentation claim is equally applicable to its negligent misrepresentation claim.

praisal Procedure. As a result, M & T Trust faces the potential of having to sell the facility to AGA Gas for $12 million, an amount which M & T Trust apparently believes undervalues the facility.

However, if it proves that Zeman misrepresented AGA Gas's intention with regard to the Appraisal Procedure, M & T Trust will not have to sell the facility to AGA Gas for $12 million. Under the principle of equitable estoppel, such a misrepresentation would prevent AGA Gas from claiming that the October 14, 1999, letter constituted an Appraisal Request. *See Walworth v. BP Oil Co.*, 112 Ohio App.3d 340, 345, 678 N.E.2d 959, 963 (1996). AGA Gas's $12 million appraisal would thus not establish the purchase price.

Unable to show injury resulting from Zeman's alleged misrepresentation, M & T Trust cannot prevail on its fraud claim. Accordingly, the Court grants summary judgment to AGA Gas and Zeman.

## IV.

For the reasons set forth above, the Court makes the following rulings:

(1) The Court grants AGA Gas's motion for summary judgment on its claim for a judgment declaring that M & T Trust is the real party in interest in this suit.

(2) The Court denies AGA Gas's motion for summary judgment on its claim for a judgment declaring that M & T Trust is required to sell the facility to AGA Gas.

(3) The Court denies AGA Gas's motion for summary judgment on its claim for a judgment declaring that, if M & T Trust is required to sell the facility to AGA Gas, the purchase price of the facility is $12 million.

(4) The Court denies AGA Gas's motion for summary judgment on its claim for specific performance ordering M & T Trust to sell the facility to AGA Gas for $12 million.

(5) The Court denies AGA Gas's motion for summary judgment on M & T Trust and Chase Manhattan Trust's claims for indemnity.

(6) The Court denies AGA Gas's motion for summary judgment on its claim for breach of the duty of good faith and fair dealing against M & T Trust.

(7) The Court grants AGA Gas's motion for summary judgment on M & T Trust's claim for breach of the duty of good faith and fair dealing.

(8) The Court grants AGA Gas's motion for summary judgment on M & T Trust's claim for negligent or intentional misrepresentation.

(9) The Court grants Monica Zeman's motion for summary judgment on M & T Trust's claim for negligent or intentional misrepresentation.

(10) The Court denies M & T Trust's motion for summary judgment on its claim seeking a judgment declaring that it is not required to sell the facility to AGA Gas.

(11) The Court denies M & T Trust's motion for summary judgment on its claim seeking a judgment declaring that, if M & T Trust is required to sell the facility to AGA Gas, the purchase price is yet to be determined.

(12) The Court denies M & T Trust's motion for summary judgment on its claim for indemnity against AGA Gas.

(13) The Court denies M & T Trust's motion for summary judgment on its claim for breach of the duty of good faith and fair dealing against AGA Gas.

(14) The Court grants M & T Trust's motion for summary judgment on AGA Gas's claim for breach of the duty of good faith and fair dealing.

(15) The Court denies M & T Trust's motion for summary judgment on its claim for negligent or intentional misrepresentation against AGA Gas and Monica Zeman.

IT IS SO ORDERED.